**NEWSDAY, INC., Plaintiff–Appellee,**

v.

**LONG ISLAND TYPOGRAPHICAL UNION, NO. 915, CWA, AFL–CIO, Defendant–Appellant.**

**No. 1410, Docket 90–7236.**

United States Court of Appeals, Second Circuit.

Argued May 30, 1990.

Decided Oct. 5, 1990.

Bradford W. Coupe, New York City (Morgan, Lewis & Bockius, New York City, D. Michael Underhill, Stephen A. Sola, Morgan, Lewis & Bockius, Washington, D.C., of counsel), for plaintiff-appellee.

Alan E. Wolin (Lecci, Wolin & Wolin, Hicksville, N.Y., of counsel), for defendant-appellant.

Alison Wetherfield, Sarah E. Burns, NOW Legal Defense and Educ. Fund, et al., New York City, amici curiae for plaintiff-appellee.

Charles A. Shanor, General Counsel, E.E.O.C. (Gwendolyn Young Reams, Associate General Counsel, Vella M. Fink, Asst. General Counsel, John F. Suhre, Atty., Washington, D.C., of counsel), as amicus curiae.

Before LUMBARD, KEARSE and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

The Long Island Typographical Union No. 915 (the "Union") appeals from an order of the District Court for the Eastern District of New York, I. Leo Glasser, *Judge*, which granted plaintiff-appellee Newsday, Inc.'s motion for summary judgment in Newsday's action to vacate a labor arbitrator's award. The challenged award ordered reinstatement of William Waters, whom Newsday had discharged for sexually harassing female coworkers.

We conclude that Judge Glasser properly vacated the arbitrator's award as violating the explicit, well-defined, and dominant public policy against sexual harassment in the work place.

I.

On or about September 27, 1989, Newsday commenced this action against the Union to vacate an award issued by labor arbitrator Richard Adelman on August 25, 1989. The arbitration had resolved a dispute between Newsday and the Union under their collective bargaining agreement; the award ordered the reinstatement of William Waters, who had been discharged by Newsday for sexually harassing female co-workers. The Adelman order reinstated Waters to his former position as a compositor, subject to a determination that Waters was medically fit to perform his duties.

Newsday sought vacatur of this award on three grounds: the award offended the well-defined public policy against sexual harassment in the work place; it exceeded the limits of the arbitrator's authority; and it failed to draw its essence from the parties' collective bargaining agreement.

The Union's Answer and Counterclaim opposed Newsday's attempt to vacate the award and requested an order vacating

that portion of Arbitrator Adelman's award which made Waters' reinstatement contingent upon his passing a medical examination.

Newsday then moved for summary judgment. Thereafter, the Union cross-moved for summary judgment, seeking to confirm the award of reinstatement and to vacate portions of the award that permitted Newsday to condition Waters' reinstatement on a determination of medical fitness.

In an order dated February 6, 1990, Judge Glasser granted Newsday's motion and denied the Union's cross-motion. The Union appeals. We affirm.

## II.

### A. *Events Leading to the Adelman Arbitration*

Although it was Waters' sexual harassment of a female co-worker in July 1988 that catalyzed this lawsuit, the dispute between Newsday and Waters began on June 21, 1983, when Waters, a compositor at Newsday's Melville, New York facility since 1968, was discharged for "disorderly conduct" in violation of Composing Room Office Rules. On June 25, Newsday voluntarily reinstated Waters, but Waters and the Union filed a grievance against Newsday for the suspension. The issue was arbitrated before George F. Sabatella in November 1983.

On February 23, 1984, Arbitrator Sabatella issued an award sustaining the disciplinary action as not being in violation of the parties' collective bargaining agreement. In his decision, Sabatella stated:

> certain female employees also working in the composing room have complained to Newsday management about Mr. Waters [sic] behavior. It appears that when Mr. Waters was occasioned to pass by these female employees certain "offensive and unauthorized contact" took place.

Although Sabatella determined that the award was nonprecedent setting,[1] he stated:

Furthermore, I am also of the opinion the type and degree of misconduct which was the basis of Mr. Waters' disciplinary action can not in any way be tolerated in the work place for it disrupts and demoralizes the people functioning of [sic] a unit. Any action on the part of Mr. Waters which is consistent with this past citable behavior shall be grounds for immediate discharge and he will not be given the benefit of the doubt or shown any leinency [sic].

Waters was again discharged for disorderly conduct on July 22, 1988. The dispute over whether the discharge was for just cause was submitted to Arbitrator Richard Adelman who, in an opinion and award dated August 25, 1989, made factual findings that included the following: Late in the evening on July 7, 1988, Waters "brushed up against [a female co-worker's] lower back and upper buttocks," and then, ten minutes later, "slammed into her back" and "said, 'Excuse me!' in a tone that made [the co-worker] feel the contact was not accidental." The co-worker reported the incident to the Union and to Newsday. Newsday conducted an investigation of this complaint, which revealed two other incidents of alleged sexual harassment.

As described by Arbitrator Adelman, Waters approached a woman in the composing room in late 1983 or early 1984, "put his hand on her rib cage and started moving it down towards her waist." The woman "grabbed Mr. Waters' hand and told him she would break his fingers if he ever did that again." Because the woman was a probationary employee at the time, she did not report the incident.

Another instance of harassment had occurred in the composing room in December 1986, when Waters "came behind [a female co-worker] and slapped her on the rear end." Several supervisors witnessed the incident, but the worker refused to report it because she was new in the composing room. In light of these incidents and Saba-

---

**1.** Sabatella's decision to issue a non-precedent setting award as between the Union and Newsday was in part due to the parties' collective bargaining agreement, which Sabatella found did not speak to the type of disciplinary action taken by Newsday in Waters' case.

tella's warning in 1984, Newsday discharged Waters on July 22, 1988.

## B. *The Adelman Arbitration*

In his opinion, Adelman rejected the Union's position that the three incidents never occurred, and found that they all happened as described in the testimony of Waters' co-workers. Adelman stated:

> [T]here is no doubt that the actions by Mr. Waters in moving his hand down [one co-worker's] back from her rib cage to her waist, in slapping, or patting, [another co-worker] on her rear end, and in slamming into [a third's] back was conduct that violated both the composing room office rules and Newsday's policy against "harassing, abusive or intimidating" behavior. This conduct was quite offensive to the women involved, and clearly constitutes harassment under Newsday's policy, as well as interference with "the business of the office" under the rules of the composing room.

With regard to the appropriate penalty, Adelman rejected the Union's contentions that the incidents involving Waters were minor in nature, and that Newsday used the incidents as a pretext for discharging an employee with a job guarantee. Adelman added that the incidents were serious, and of the type which Newsday has properly attempted to eliminate from its work place.

Nonetheless, Adelman decided that Waters was not discharged for just cause. Although Adelman found "[t]he fact that Mr. Waters has engaged in similar conduct in the past for which he was disciplined is significant, especially considering the serious nature of his conduct," he added, "these offenses are not ones that call for immediate discharge; instead, such offenses call for the application of progressive discipline." Adelman acknowledged that Waters had been subject to discipline in 1983; he stated that if Waters had been disciplined after either of the two previously-unreported incidents, then discharge might have been appropriate following the 1988 incident. He concluded that it would be inappropriate and contrary to the concept of progressive discipline to uphold Waters' discharge. He stated:

> At this point, Mr. Waters must understand that he has engaged in conduct that is unacceptable in the workplace, that he is treading on dangerously thin ice, and that any similar offensive behavior shall be grounds for his immediate discharge.

Adelman ruled that Waters, upon passing a medical examination, should be reinstated without back pay.

## C. *The District Court Decision*

Judge Glasser vacated Adelman's award of reinstatement, finding that it offended an explicit public policy condemning sexual harassment in the work place "that is clearly defined and readily found in statutes, regulations and judicial decisions." Specifically, Judge Glasser cited Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1); federal regulations, 29 C.F.R. § 1604.11(c), (d), and (f) (1989); and New York State statutes and regulations. He also stated, "The need to demonstrate judicial cognizance of the public policy against sexual harassment should not require citation beyond *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)."

Judge Glasser further ruled that the inevitable consequence of the arbitrator's award reinstating Waters would be to "compel his female co-workers to submit to his sexual harassment (conduct of which he has been repeatedly adjudicated) as a condition of their employment" and would "permit his sexual harassment to threaten to perpetuate a hostile, intimidating and offensive work environment." The court also recognized that the EEOC regulations direct an employer to take all steps necessary to prevent sexual harassment, and that Newsday had attempted to comply with that direction.

> Judge Glasser opined:
> A clearer expression of a well defined public policy ... will not be more readily found. That policy is subverted when an employer is required to reinstate an employee who is a chronic sexual harasser and an award which has that effect should be vacated.

Accordingly, Judge Glasser granted Newsday's motion for summary judgment, vacating the Adelman Award, and denied defendant's cross-motion.

## III.

### A. *Review of the Arbitrator's Award*

As acknowledged by Judge Glasser, courts have a limited role when asked to review the decision of an arbitrator. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987). Courts are not authorized to reconsider the merits of an award, as doing so would undermine the federal policy of settling labor disputes by arbitration. *Id.*

Nevertheless, a court may refuse to enforce an arbitrator's award under a collective bargaining agreement if the award is contrary to public policy. *Id.* at 42, 108 S.Ct. at 373. This is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. *Id.* However,

> [A] court's refusal to enforce an arbitrator's *interpretation* of such contracts is limited to situations where the contract as interpreted would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'"

*Id.* at 43, 108 S.Ct. at 373 (emphasis in original) (quoting *W.R. Grace & Co. v. International Union of Rubber Workers, Local 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983) (quoting *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945))).

### B. *The Public Policy Against Sexual Harassment*

#### 1. *Federal Statutes and Regulations*

The public policy against sexual harassment in the work place is well-recognized. Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of sex. 42 U.S.C. § 2000e–2(a)(1). The Equal Employment Opportunity Commission, (the "EEOC"), which administers and enforces this provision, has promulgated a guideline stating:

> Harassment on the basis of sex is a violation of Sec. 703 of Title VII. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when ... (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a) (1989) (footnote omitted). In its Compliance Manual, the EEOC also has issued the following policy statement:

> [U]nwelcome, intentional touching of a charging party's intimate body areas is sufficiently offensive to alter the conditions of her working environment and constitute a violation of Title VII. More so than in the case of verbal advances or remarks, a single unwelcome physical advance can seriously poison the victim's working environment.

*EEOC Policy Guidance: Sexual Harassment*, N–915.035, *reprinted in* EEOC Compl. Man. (BNA) N:4001, 4016 (Oct. 25, 1988).[2]

Moreover, Title VII places upon an employer the responsibility to maintain a work place environment free of sexual harassment. The EEOC Guidelines make employers liable for sexual harassment between fellow employees of which it knew or should have known, "unless it can show that it took immediate and appropriate corrective action." 29 C.F.R. § 1604.11(d). The EEOC Guidelines indicate that employers should take all reasonable steps to prevent harassment from occurring in the employment setting, such as

> affirmatively raising the subject, expressing strong disapproval, developing appropriate sanctions, informing employees of their right to raise and how to raise the issue of harassment under Title

---

**2.** New York has similar legislation and rules. *See* N.Y.Exec.Law § 291 (McKinney 1982); New York State Division of Human Rights, *New York: Rulings on Pre–Employment Inquiries*, 8B State Fair Empl.Prac.Man. (BNA) 455:3151, 3159 (1989).

VII, and developing methods to sensitize all concerned.

29 C.F.R. § 1604.11(f). The EEOC Compliance Manual further provides that employers should create a procedure for resolving sexual harassment complaints that encourages victims of sexual harassment to come forward. *EEOC Policy Guidance, supra,* at N:4028. "It should ensure confidentiality as much as possible and provide effective remedies, including protection of victims and witnesses against retaliation." *Id.*

### 2. Case Law

The public policy against sexual harassment in the work place similarly has been recognized by the courts. In *Meritor Savings Bank, FSB v. Vinson,* the United States Supreme Court held that a plaintiff may establish a Title VII violation by proving that discrimination based on sex has created a hostile or abusive work environment. 477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).[3] In so finding, the Court stated that the EEOC Guidelines, as an administrative interpretation of Title VII, "while not controlling ... constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Id.* at 65, 106 S.Ct. at 2404 (citations omitted). The Court also stated that the EEOC Guidelines "drew upon a substantial body of judicial decisions and EEOC precedent holding that Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Id.* at 65, 106 S.Ct. at 2405.

In sum, there is an explicit, well-defined, and dominant public policy against sexual harassment in the work place.

### C. *Arbitrator Adelman's Award*

Adelman's award of reinstatement completely disregarded the public policy against sexual harassment in the work place. The arbitrator has also disregarded Sabatella's ruling that any further acts of harassment by Waters would be grounds for discharge. Instead, Adelman's award

condones Waters' latest misconduct; it tends to perpetuate a hostile, intimidating and offensive work environment. Waters has ignored repeated warnings. Above all, the award prevents Newsday from carrying out its legal duty to eliminate sexual harassment in the work place.

In view of this conclusion, it is unnecessary to discuss the other points raised by the parties.

### IV.

We affirm the district court's order, which granted Newsday's motion for summary judgment in its action to vacate Arbitrator Adelman's award of reinstatement.

---

**3.** Environmental work place harassment is harassment that is not directly linked to the grant or denial of an economic *quid pro quo.*

*See Meritor Savings Bank, FSB,* 477 U.S. at 65, 106 S.Ct. at 2404. It is the type of harassment that occurred in the instant case.