UNITED TRANSPORTATION UNION and Lawrence D. Boynton, Petitioners,

v.

BURLINGTON NORTHERN RAILROAD COMPANY, Respondent.

Civ. No. 93–1472–FR.

United States District Court, D. Oregon.

Sept. 22, 1994.

Monte Bricker, Bricker, Zakovics & Querin, P.C., Portland, OR, Kevin C. Brodar, Daniel R. Elliott, III, United Transp. Union, Cleveland, OH, for petitioners.

Larry E. Leggett, Kroschel & Gibson, Bellevue, WA and Lawrence M. Stroik, Bur-

lington Northern R. Co., Fort Worth, TX, for respondent.

## OPINION

FRYE, District Judge.

The matters before the court are (1) the motion of the petitioners for summary judgment (# 17); and (2) the motion of the respondent for summary judgment on cross-petition (# 19).

## BACKGROUND

The respondent, Burlington Northern Railroad Company (the Railroad), challenges an award made by grievance arbitrator John C. Fletcher on December 29, 1992. The subject of the grievance was the sexual harassment by the petitioner, Lawrence D. Boynton, an employee of the Railroad, against another employee of the Railroad, K.L. Tutor. The sexual harassment occurred on property of the Railroad during a company-sponsored social function. The facts surrounding the sexual harassment are not in dispute. Boynton has acknowledged that he sexually harassed Tutor.

Tutor reported the sexual harassment to her supervisor and to the United Transportation Union (the Union). The Railroad conducted a hearing and on April 4, 1990 dismissed Boynton for sexual harassment of a co-worker in violation of Rule 564 of the Railroad's Safety Rules and General Rules prohibiting sexual harassment.

Boynton then filed a grievance with the Union protesting his dismissal. The Railroad argued to the Referee that the dismissal of Boynton should be upheld; that sexual harassment is an extreme and particularly insidious form of gross misconduct; that sexual harassment is explicitly prohibited by long-standing and well-known company safety and general rules; and that prior arbitral awards have upheld discipline, including dismissal, for similar instances of gross misconduct. The Railroad further argued that, contrary to the arguments of the Union, there had been no procedural violation of Rule 44, which requires that complaints by workers against co-workers be made in writing and that the written complaints be open for in-

spection because the Union knew what the charge was from the beginning since it had received the first letter written by Tutor about it and because the Union had had ample opportunities to review all of the written materials connected with the charge prior to the hearing.

The Union contended that Rule 44 had been violated because the charge of sexual harassment against Boynton had been made orally, and that in any event under the facts and circumstances relating to this charge, dismissal was unduly harsh discipline for Boynton's misconduct.

Following the processing of Boynton's grievance and a hearing before the National Railroad Adjustment Board under the Railway Labor Act (RLA), 45 U.S.C. § 153 First (q), Referee Fletcher ruled on December 29, 1992 that "because of procedural violations the merits of this matter need not be decided." Award, p. 3. Referee Fletcher sustained Tutor's claims against Boynton, but reversed the discipline imposed by the Railroad on Boynton because the Railroad had failed to insure that the requirements of Rule 44 were satisfied. Rule 44 provides that "[a]ny complaint against a trainman by another employee must be made in writing to receive consideration; all papers shall be open for inspection." Referee Fletcher found that "the female coworker's complaint against [Boynton] was oral," and that "[d]iscipline resulting from a flawed charge cannot stand." Award, p. 4.

The Railroad now petitions this court to vacate Referee Fletcher's award arguing that it is contrary to federal law and federal policy which prohibits sexual harassment in the work place. The Union also moves for summary judgment asking this court to enforce the award and find that the decision of the National Railroad Adjustment Board is conclusive and binding on the parties as a matter of statutory law and cannot be relitigated in this court.

## DISCUSSION

The Union argues that arbitration awards under the RLA are subject to limited review; that limited review is not available in this

case; and therefore the award must be enforced. The Union cites language from Section 3 First (p) of the RLA, which states, in part:

(p) If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the [USDC] ... a petition setting forth briefly the causes for which he claims relief.... Such suit ... shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties.... The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: *Provided, however,* That such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (p), Section 3.

The United States Supreme Court has confirmed the limited role of the courts in "minor dispute" resolution in the context of the RLA. In *Gunther v. San Diego & Ariz. E. Ry. Co.*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965), the United States Supreme Court reversed and remanded a lower court's order refusing to enforce an order of the National Railroad Adjustment Board in favor of an employee. The Court rejected the contention that a court may consider the underlying merits of a decision of the Adjustment Board. The Court stated: "We hold it cannot. This Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board." *Id.* at 263, 86 S.Ct. at 372.

Further, findings and awards by Railroad Adjustment Boards are not subject to judicial review, even if there are arguably "legal" issues. In *Union Pac. R.R. Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978), the Court stated:

Characterizing the issue presented as one of law ... does not alter the availability or scope of judicial review: The dispositive question is whether the party's objections to the Adjustment Board's decision fall within any of the three limited categories of review provided for in the Railway Labor Act. Section 153 First (q) unequivocally states that the 'findings and order of the [Adjustment Board] shall be conclusive on the parties' and may be set aside only for the three reasons specified therein. We have time and again emphasized that this statutory language means just what it says.

The Union contends that the Adjustment Board interpreted the agreement of the parties in making its award. After detailing the events leading up to the investigation of Boynton which lead to his dismissal, the Adjustment Board turned to the Union's claim on behalf of Boynton that Tutor did not follow Rule 44 of the agreement between the Railroad and the Union, which requires that "[a]ny complaint against a trainman by another employee must be made in writing." The Referee found:

Rule 44 does not operate only in other than sexual harassment cases. The Rule, by its simple uncomplicated terms, is operative when "any complaint against a trainman by another employee" is to receive consideration. The broad term "any complaint" must also include complaints of sexual harassment. The co-workers sexual harassment complaint against Claimant received consideration by Carrier even though it was not made in writing. Claimant was denied benefit of a Rule which was placed in the Agreement for his protection. Discipline resulting from a flawed charge cannot stand. It must be reversed.

Award, p. 4. The Adjustment Board, in order to remedy the violation of the agreement, required that "[c]laimant is to be restored to service and compensated for all wage losses incurred." *Id.*

The Union argues that the United States Supreme Court in *Union Pac. R.R. Co. v. Sheehan, supra,* made it clear that an RLA award may only be reviewed on one of the three grounds listed in 45 U.S.C. § 153 First (q). Those grounds are a violation of the Act, an act committed outside the scope of jurisdiction, or fraud or corruption. Since there are no public policy grounds permitted by the statute, the Union contends that public policy grounds may not be considered here.

The Railroad argues that a "public policy exception" has been recognized by the courts, and that courts will review awards that contravene public policy. The United States Court of Appeals for the Ninth Circuit has characterized the public policy exception as a "now-settled rule" that "is actually nothing more than a specific application of the general rule that a court cannot enforce any contract that contravenes public policy." *Stead Motors v. Automotive Machinists Lodge No. 1173,* 886 F.2d 1200, 1209 n. 9 (9th Cir.1989) (*en banc*) (citations omitted), *cert. denied,* 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990).

In *W.R. Grace and Co. v. Local Union 759,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), the United States Supreme Court held that a court would be "obliged to refrain from enforcing" an arbitral award that violated public policy if the public policy was "explicit" and further was "well defined and dominant." *Id.* at 766, 103 S.Ct. at 2183. In *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 47, 108 S.Ct. 364, 375, 98 L.Ed.2d 286 (1987), the United States Supreme Court reversed a decision by the United States Court of Appeals for the Fifth Circuit in which an award reinstating an employee had been vacated because the court believed reinstatement would violate a general public policy "against the operation of dangerous machinery by persons under the influence of drugs or alcohol." The Court held that:

[A] court's refusal to enforce an arbitrator's *interpretation* of such contracts is limited to situations where the contract as interpreted would violate "some explicit public policy" that is "well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'"

*Id.* at 43, 108 S.Ct. at 373 (emphasis in original).

In order for an arbitrator's award to be rejected in the Ninth Circuit as violative of public policy, "it is the arbitrator's *award* which must violate" a public policy. *Stead Motors,* 886 F.2d at 1211 n. 11 (emphasis in original). The court stated:

If a court relies on public policy to vacate an arbitral award reinstating an employee, it must be a policy that bars *reinstatement.* Courts cannot determine merely that there is a "public policy" against a particular sort of behavior in society generally and, irrespective of the findings of the arbitrator, conclude that reinstatement of an individual who engaged in that sort of conduct in the past would violate that policy.

*Id.* at 1212 (emphasis in original and footnote omitted). In other words, it must be demonstrated "that the policy is one that specifically militates against the relief ordered by the arbitrator." *Id.* at 1212–13.

The Railroad contends that the *Stead Motors* opinion does not address the issues of (1) whether it must demonstrate that enforcement of an award would actually violate "a statute, regulation or other manifestation of positive law;" and (2) whether a court can vacate an arbitral award in which "the arbitrator has concluded that the grievant is *not* subject to rehabilitation and then orders reinstatement (on the ground, for example, of a procedural or contractual violation by the employer in the course of the discharge) even though the grievant's future conduct is likely to pose a continuing safety risk to his co-workers or the public." *Id.,* 886 F.2d at 1212 n. 12, 1213–14 n. 14 (emphasis in original).

Next, the Railroad contends that the United States has a clear, well-defined and dominant policy prohibiting sexual harassment in the work place, which includes an affirmative duty on the part of employers to counteract and eliminate sexual harassment. The Railroad refers to two recent cases where arbi-

tral awards were vacated because they ran afoul of the policy prohibiting sexual harassment. *See Stroehmann Bakeries, Inc. v. Local 776*, 969 F.2d 1436, 1441–42 (3rd Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 660, 121 L.Ed.2d 585 (1992); and *Newsday, Inc. v. Long Island Typographical Union*, 915 F.2d 840, 844–45 (2nd Cir.1990), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1314, 113 L.Ed.2d 247 (1991).

 The policy prohibiting sexual harassment in the work place places on employers the affirmative legal "responsibility to maintain a work place environment free of sexual harassment." *Newsday, Inc.*, 915 F.2d at 844. The EEOC's guidelines make an employer liable for the sexual harassment of an employee by a fellow employee of which the employer knew or should have known, unless the employer "can show that it took immediate and appropriate corrective action." *Id.*

Referee Fletcher's award violates well-defined and dominant public policy reasons against sexual harassment in the work place, and therefore the award is reviewable on that basis. In *Union Pac. R.R. Co. v. United Transp. Union*, 3 F.3d 255 (8th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 881, 127 L.Ed.2d 76 (1994), the United States Supreme Court held that federal courts possess the authority to vacate arbitration awards under the RLA on public policy grounds and may do so when those awards violate "well-defined and dominant public policies." *Id.* at 258. The court affirmed the district court's order overturning an award under the RLA that reinstated a railroad employee without determining whether the employee posed a significant risk if he was reinstated. *Id.* at 258–63. The Supreme Court denied the petition of the Union for a writ of certiorari.

The rationale for judicial review as a matter of public policy applies equally to awards made under the RLA and the National Labor Relations Act. The *Misco* Court noted that this doctrine derives from the basic principle that a court will not allow itself to aid or become party to the carrying out of an act that violates public policy. *Id.*, 484 U.S. at 42–43, 108 S.Ct. at 373. This rationale applies to awards made under either labor statutory scheme.

Referee Fletcher's award requires review because it reinstated Boynton with no determination as to whether sexual harassment had occurred despite uncontroverted evidence that it had contrary to well-defined and explicit public policy.

## CONCLUSION

The motion of the petitioners for summary judgment (# 17) is denied. The motion of the Railroad for summary judgment on cross-petition (# 19) is granted.