*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0099P (6th Cir.)
File Name: 04a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

Way Bakery,
    *Plaintiff-Appellant,*

    *v.*

Truck Drivers Local No.
164 and James Zentgraf,
    *Defendants-Appellees.*

No. 02-2051

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-73392—Avern Cohn, District Judge.

Argued: March 18, 2004

Decided and Filed: April 7, 2004

Before: COLE and GILMAN, Circuit Judges;
SCHWARZER, Senior District Judge.*

———————

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

———————

## COUNSEL

**ARGUED:** Daniel G. Cohen, PILCHAK, COHEN & TICE, Farmington Hills, Michigan, for Appellant. Andrea F. Hoeschen, PREVIANT, GOLDBERG, UELMAN, GRATZ, MILLER & BRUEGGEMAN, Milwaukee, Wisconsin, for Appellees. **ON BRIEF:** Daniel G. Cohen, Rhonda H. Sanko, PILCHAK, COHEN & TICE, Farmington Hills, Michigan, for Appellant. Andrea F. Hoeschen, PREVIANT, GOLDBERG, UELMAN, GRATZ, MILLER & BRUEGGEMAN, Milwaukee, Wisconsin, for Appellees.

———————

## OPINION

———————

RONALD LEE GILMAN, Circuit Judge. This case arises out of an arbitrator's reinstatement of a white employee who was terminated for making a racially offensive remark to a black coworker. The employer brought suit to vacate the arbitrator's award. After the district court ruled in favor of the employee and Truck Drivers Local No. 164 (the Union), the employer appealed. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

### I. BACKGROUND

James Zentgraf worked for Way Bakery and is a member of the Union. In February of 2000, Zentgraf, a white employee, told Diana Thomas, an African-American coworker, to "relax Sambo." Despite his repeated attempts to apologize to Thomas shortly thereafter, Zentgraf was suspended for making the remark. He then filed a grievance in protest of the discipline. After denying the grievance, Way Bakery

terminated Zentgraf because his "conduct clearly violated the Company's Equal Employment Opportunity policy."

Zentgraf's grievance against Way Bakery was subsequently submitted to arbitration. The arbitrator found for Zentgraf, reducing his discharge to six months unpaid suspension and reinstating him at Way Bakery. But the arbitrator placed Zentgraf on "probation for a period of five years during which a repeat of this type of conduct, that is, racial harassment or racially abusive language, would be the basis for immediate discharge."

Way Bakery brought suit to vacate the arbitration award pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and Michigan state law. The complaint alleged that the arbitrator's award violated public policy, exceeded the scope of the arbitrator's authority, and did not draw its essence from the Collective Bargaining Agreement (CBA). Both parties filed motions for summary judgment. Way Bakery sought, among other things, to vacate the arbitration award. The Union and Zentgraf, on the other hand, sought summary judgment. After the district court heard arguments on the respective motions, it granted the Union's and Zentgraf's motion for summary judgment in July of 2002. This timely appeal followed.

## II. ANALYSIS

### A. Arbitration awards

Although we review the district court's grant of summary judgment to the Union and Zentgraf de novo, "courts play only a limited role when asked to review the decision of an arbitrator." *Tennessee Valley Auth. v. Tennessee Valley Trades & Labor Council*, 184 F.3d 510, 514 (6th Cir. 1999) (per curiam) (quotation marks and citation omitted). A court's review of an arbitration award "is one of the narrowest

standards of judicial review in all of American jurisprudence." *Id.* at 515. (quotation marks and citation omitted). Disagreement with an arbitrator's factual findings does not constitute grounds for a court's rejection of those findings. *Id.*

We must enforce the arbitrator's agreement as long as the award "draws its essence from the collective bargaining agreement" and is not merely the arbitrator's "own brand of industrial justice." *Id.* (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960) (quotation marks omitted)). "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) (quotation marks and citation omitted).

### B. Essence of the collective bargaining agreement

Way Bakery argues that the arbitration award fails to draw its essence from the CBA because (1) the arbitrator exceeded the authority expressly granted to him by the CBA, and (2) the arbitrator based the award upon general considerations of fairness. To determine whether an arbitration award fails to draw its essence from the CBA, this court has developed a four-pronged test: "[A]n award so fails when: (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement." *Int'l Union v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002) (quotation marks and citation omitted).

In a detailed 35-page opinion, the arbitrator thoroughly reviewed and analyzed the CBA and Way Bakery's Equal

Employment Opportunity (EEO) policy. The arbitrator found that although the CBA authorized Way Bakery to adopt its EEO policy, the policy was not a part of the CBA:

> Section 11 gives the Employer the right to adopt rules 'in addition to those' attached to the Agreement. Thus, the progressive discipline in the contract covers those rules expressly spelled out, but does not by inference apply to other rules which the Employer may promulgate.

He then considered the question of

> what principles govern discipline under the Equal Employment Opportunity policy. The policy itself says that discipline may be 'up to and including discharge.' This implies a range of discipline. Section 11 permits the adoption of 'reasonable rules and regulations.' We are not without guidelines.

The arbitrator finally determined that although the EEO policy was not subsumed by the CBA, the same disciplinary principles should apply. He concluded that

> [t]he contract rules, taken as a whole, contemplate progressive discipline in a host of situations. The Equal Employment Opportunity policy may be enforced by discipline 'up to' discharge. Clearly, there may be discipline less than discharge. Based on these elements, the undersigned finds that progressive discipline should apply.

Article 17 of the CBA prescribes the grievance procedure, which limits an arbitrator's authority as follows:

> The power of the arbitrator shall be limited to the written contract and/or he shall have no power to modify, change, add to or subtract from, the terms of this

> Agreement. The arbitrator's decision shall be final and binding upon both parties.

Way Bakery argues that the arbitrator exceeded his authority because the EEO policy *allowed* Way Bakery to terminate Zentgraf for a policy violation. The plain language of the EEO policy, however, does not *preclude* discipline less severe than termination. Interpreting similar language, this court has held that arbitrators are within their authority to review and modify penalties imposed by employers. *Bruce Hardwood Floors v. S. Council of Indus. Workers*, 8 F.3d 1104 (6th Cir. 1993). In *Bruce*, the employer discharged a worker for sleeping on the job. The employee's resulting grievance was submitted to arbitration, and the arbitrator modified the disciplinary action by reinstating her with back pay. On appeal from the district court's decision to vacate the arbitrator's award, this court reversed, reasoning that the award did not conflict with the CBA. *Id.* at 1108-09.

The relevant sections of the CBA in *Bruce* provided that the employer could discharge an employee for committing an offense enumerated in the CBA, and allowed the company to discipline and discharge employees for "just cause." *Id.* at 1108. Nevertheless, this court held that the arbitrator's award was rationally derived from the terms of the CBA, did not conflict with the CBA's express terms, and did not add requirements not expressly provided in the CBA. *Id.*; *see also Eberhard Foods, Inc. v. Handy & Local 406*, 868 F.2d 890, 892 (6th Cir. 1989) (reinstating an arbitrator's award that modified an employer's disciplinary action, reasoning that "nothing . . . in the CBA or work rules . . . expressly limits or removes from the arbitrator the authority to review the remedy in this case").

The arbitrator in the present case had the authority to review Way Bakery's termination of Zentgraf, and his award does not conflict with the CBA or add requirements not present in the CBA; rather, the award is, as discussed above,

derived from and based upon the CBA. As the Union and Zentgraf note, the parties "bargained for an arbitrator's interpretation of the Agreement, and they received the product of that bargain."

## C.   Public policy considerations

Way Bakery next argues that the arbitrator's award should be vacated because Zentgraf's reinstatement violates public policy, which supports an employer's efforts to comply with Title VII and to "purge the workplace of harassment." This court has held that when an arbitration award is challenged on public policy grounds, "the court must determine whether the arbitrator's interpretation of the contract jeopardizes a well-defined and dominant public policy, taking the facts as found by the arbitrator." *MidMichigan Reg'l Med. Ctr.-Clare v. Prof'l Employees Div. of Local 79*, 183 F.3d 497, 504 (6th Cir. 1999) (quotation marks and citation omitted). The relevant public policy is ascertained "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983)) (quotation marks omitted).

Courts do not possess a "broad power to set aside an arbitration award as against public policy." *Tennessee Valley Auth. v. Tennessee Valley Trades & Labor Council*, 184 F.3d 510, 520 (6th Cir. 1999) (per curiam). The issue is "not whether grievant's conduct for which he was disciplined violated some public policy or law, but rather whether the award requiring the reinstatement of a grievance, i.e., the contract as interpreted, violated some explicit public policy." *Id.* (quotation marks and citations omitted).

In support of its argument that the arbitrator's award reinstating Zentgraf violates public policy, Way Bakery primarily relies upon *Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters*, 969 F.2d 1436 (3d Cir. 1992), and

*Newsday, Inc. v. Long Island Typographical Union, No. 915*, 915 F.2d 840 (2d Cir. 1990). The employer in *Stroehmann* discharged an employee for sexual harassment. An arbitrator subsequently reinstated the employee without determining whether the sexual harassment charge was true. 969 F.2d at 1437-38. The Third Circuit held that the district court properly vacated the arbitrator's award as against public policy, reasoning that the arbitrator's award

> would allow a person who may have committed sexual harassment to continue in the workplace without a determination of whether sexual harassment occurred. Certainly, it does not discourage sexual harassment. Instead, it undermines the employer's ability to fulfill its obligation to prevent and sanction sexual harassment in the workplace.

*Id.* at 1442.

Similarly in *Newsday*, the employer discharged an employee for sexually harassing a coworker. An arbitrator's award reinstated the employee. 915 F.2d at 841. The Second Circuit held that the reinstatement award "completely disregarded the public policy against sexual harassment in the work place," and reasoned further that the award condoned the employee's misconduct, thus perpetuating a hostile work environment. *Id.* at 845. Way Bakery argues that these cases show that "reinstatement undermined the employers' duty to protect their employees from further harassment."

Although we have no particular disagreement with Way Bakery's characterization of *Stroehmann* and *Newsday*, the present case is clearly distiguishable. The arbitrator in *Stroehmann* reinstated the offending employee without making a determination of whether sexual harassment had even occurred. In *Newsday,* the discharged employee was reinstated despite having sexually harassed female coworkers

on a number of occasions and having previously been disciplined for his misconduct.

Zentgraf, in contrast, did not have a prior disciplinary record for purposes of progressive discipline. Furthermore, the arbitrator's award in this case did not condone or fail to discourage hostile behavior in the workplace. Recognizing that "a serious offense ha[d] occurred," the arbitrator's award subjected Zentgraf to a six-month loss of pay and placed him on probation for five years "during which a repeat of this type of conduct, that is, racial harassment or racially abusive language, would be the basis for immediate discharge." Zentgraf, moreover, had to "acknowledge this in writing." The arbitrator concluded that Zentgraf "must demonstrate that he understands that he can remain in the work site only if he understands what he has done and complies with the Employer's policies in this area."

As framed by the Supreme Court, "the question to be answered is not whether the [employee's conduct] itself violates public policy, but whether the agreement to reinstate him does so." *Eastern Associated Coal Corp. v. United Mine Workers, Dist. 17*, 531 U.S. 57, 62-63 (2000). In *Eastern*, the Supreme Court held that public policy considerations did not require courts to refuse to enforce an arbitrator's award reinstating a truck driver who twice tested positive for marijuana use. *Id.* at 59. The Court reasoned that the arbitrator's award was not contrary to the relevant public policies, including policies "against drug use by employees in safety-sensitive transportation positions" and policies in favor of drug testing, *id.* at 65, holding as follows:

> The award before us is not contrary to these several policies, taken together. The award does not condone Smith's conduct or ignore the risk to public safety that drug use by truck drivers may pose. Rather, the award punishes Smith by suspending him for nearly three months, thereby depriving him of nearly $9,000 in lost

wages; it requires him to pay the arbitration costs of both sides; it insists upon further substance-abuse treatment and testing; and it makes clear (by requiring Smith to provide a signed letter of resignation) that one more failed test means discharge.

*Id.* at 65-66 (citation omitted).

Similarly, the arbitration award in the present case did not condone Zentgraf's behavior, but rather punished him by depriving him of his salary for six months and placing him on probation for five years. Way Bakery cites no case, nor have we found any, that establishes a public policy of flatly prohibiting the reinstatement of a worker who makes a racially offensive remark. We therefore hold that the arbitrator's award in this case did not violate public policy.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.