*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

NETJETS AVIATION, INC.,

                *Plaintiff-Appellant,*

    *v.*

INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
AIRLINE DIVISION,

                *Defendant-Appellee.*

No. 06-3851

>

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 05-00687—Gregory L. Frost, District Judge.

Argued: March 6, 2007

Decided and Filed: May 15, 2007

Before: ROGERS and GRIFFIN, Circuit Judges; RUSSELL, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Joseph E. Santucci, MORGAN LEWIS & BROCKIUS, Washington, D.C., for Appellant. William R. Wilder, BAPTISTE & WILDER, Washington, D.C., for Appellee. **ON BRIEF:** Joseph E. Santucci, MORGAN LEWIS & BROCKIUS, Washington, D.C., O. Judson Scheaf III, THOMPSON HINE, Columbus, Ohio, for Appellant. William R. Wilder, BAPTISTE & WILDER, Washington, D.C., Jonathan C. Wentz, BARKAN NEFF HANDELMAN MEIZLISH, Columbus, Ohio, for Appellee.

———————————

## OPINION

———————————

    ROGERS, Circuit Judge. This case arises from NetJets' discharge of a pilot employed by the company. The pilot's employment was terminated after NetJets learned that he had made a video depicting a pilot shooting a rifle at a DVD produced by NetJets that promoted a tentative agreement between NetJets and its pilots' union. The union grieved the termination, and the System Board of Adjustment ("the Board") ordered NetJets to reinstate the pilot. NetJets sought an order from the district court vacating the award, arguing that the award violated public policy. The district

———————————

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

1

court held that public policy review is not permitted under the Railway Labor Act ("RLA") and enforced the award. We affirm on the alternative ground that, assuming without deciding that public policy review is permitted under the RLA, the award at issue does not violate any public policy that conceivably could warrant vacating an RLA arbitration award.

Because reviewing courts are bound by the facts as found by the arbitrator, the following summary is largely based on the fact statement in the decision of the Board. As the Supreme Court held in *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987), "an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." Indeed 45 U.S.C. § 153 First (p),(q) of the RLA provides that "the findings and order of the division of the Adjustment Board shall be conclusive on the parties."

Pursuant to Title II of the RLA, NetJets and the union that represents NetJets' pilots entered into a collective bargaining agreement ("CBA") that established a System Board of Adjustment to arbitrate disputes under the CBA. Before the events that gave rise to this dispute, NetJets and the union had been negotiating a new CBA and reached a tentative agreement at the end of August 2004. NetJets sent a DVD promoting the tentative agreement to all pilots. The DVD featured statements by NetJets' president and chairman explaining the company's view regarding why the tentative agreement was fair.

Jason Piper was the chairman of the union communications committee and opposed ratification of the tentative agreement. To express his opposition to the agreement, he produced a video and posted a link to that video on the online bulletin board to which NetJets pilots had access. The Board described the content of the video as follows:

> [The] 29-second video tape . . . showed 'Contract Stress Relief–10/10/04' on a red background. It then showed a close-up of the cover of the DVD, moving to the cover placed on a black background. The face of the DVD has its title, 'The Contract is the Foundation for Everyone's Success' at the top . . . . The scene then shifts to a picture of a semi-automatic rifle being held with the left arm showing a blue uniform with three stripes. The scene then shifts to the target DVD with bullets being fired into the DVD, including a close-up showing the holes being made. The scene next shifts to the grass, apparently below the target with a close-up of the DVD case broken into pieces and then the DVD itself with bullet holes in it. Finally, there are the words 'Anyone care to guess how I voted?'

A number of pilots accessed the video and left comments on the bulletin board. Most commented that they thought the video was funny. One pilot brought the video to the attention of NetJets officials. Piper identified himself as the source of the video on the bulletin board, and, upon learning of the video, NetJets called Piper to the company headquarters for a meeting.

At that meeting, Piper indicated that he had intended the video to be a joke. NetJets' investigation, in which Piper was "extremely cooperative," concluded that Piper had "openly acted in an inappropriate and unprofessional manner demonstrating a total lack of judgment which resulted in inducing fears of workplace violence." Piper was subsequently discharged.

The union grieved Piper's termination on his behalf, arguing that the discharge was "tainted by political retaliation" and was otherwise unjustified. NetJets contended that there was just cause for the discharge because the posting of the video online exhibited extremely poor judgment and because the video involved the image of a pilot engaging in violence directed at the company. The relevant provision of the CBA provided that the "Company shall have the right to discharge or otherwise discipline any employee for just case."

The Board concluded that there was not just cause for Piper's termination. First, the Board reasoned that "once [NetJets] knew the facts, its termination of [Piper] may have been an over-reaction considering where the publication occurred and that it was part of an internal debate on the merits of the tentative agreement." Additionally, the Board found that Piper's termination did not comport with the company's past practice and that the termination was excessive in light of the fact that only other pilots saw the video.

The Board denied Piper back pay but awarded Piper reinstatement on the condition that he sign a letter indicating that he would not be involved with the union's website for one year. NetJets then filed this action seeking an order vacating the award. The union counterclaimed seeking enforcement of the award. Both parties moved for summary judgment. NetJets argued that it was entitled to summary judgment solely on the ground that the award "violates clear mandates of public policy." The district court denied NetJets' motion, holding that the RLA does not permit judicial review of Board awards on public policy grounds.

NetJets filed this timely appeal, in which it asks this court to reverse the holding of the district court, remand the case, and instruct the district court to determine whether the award violated public policy. The union asks this court to affirm the district court's holding that courts may not review on public policy grounds awards granted under the RLA. The union also argues in the alternative that, even if public policy review is permitted, this court should affirm the district court's order on the ground that the order here does not violate public policy.

We decline the parties' invitation to decide whether the RLA permits federal courts to set aside an award of the System Board of Adjustment on public policy grounds because to do so in this case, where public policy so obviously fails to warrant setting aside the arbitral decision, would be the practical equivalent of giving an advisory opinion.[1] We therefore affirm the judgment of the district court on the alternative ground that the Board's award does not violate public policy.

Even assuming that public policy review is permitted under the RLA, such review would necessarily be limited to determining "'whether the arbitrator's interpretation of the contract jeopardizes a well-defined and dominant public policy, taking the facts as found by the arbitrator.' Public policy must be determined from laws and legal precedents, not general considerations of public interest." *USPS v. Nat'l Ass'n of Letter Carriers*, 330 F.3d 747, 751 (6th Cir. 2003) (citations omitted).

NetJets contends that the award reinstating Piper violates public policy "aimed at maximizing aviation safety," and "the strong public policy requiring employers to provide a safe working environment." Assuming for the sake of argument that NetJets' concerns are based in "laws and legal precedents, not general considerations of public interest," the facts as found by the

---

[1]The question of whether public policy review is permitted by the RLA has not been addressed by this court. NetJets urges us to join those circuits that have determined that public policy review is available under the RLA. *See Union Pacific R. R. Co. v. United Transp. Union*, 3 F.3d 255, 258 (8th Cir. 1993); *Delta Air Lines, Inc. v. Air Line Pilots Ass'n*, 861 F.2d 665, 674 (11th Cir.1988). On the other hand, the union argues that the controlling statutory language and Supreme Court precedent provide that the grounds for judicial review of awards under the RLA are narrowly and exclusively defined. The union relies upon *Union Pac. Ry. Co. v. Sheehan*, 439 U.S. 89, 93 (1978), in which the Court stated,

> Judicial review of Adjustment Board orders is limited to three specific grounds: (1) failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine, itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. Only upon one or more of these bases may a court set aside an order of the Adjustment Board.

Board would not support NetJets' contention that the award reinstating Piper violates these public policies.

The issue under a public policy review would not be "whether grievant's conduct for which he was disciplined violated some public policy or law, but rather whether the award requiring the reinstatement of a grievance, i.e., the contract as interpreted, violated some explicit public policy." *Way Bakery v. Truck Drivers Local No. 164*, 363 F.3d 590, 595 (6th Cir. 2004) (quoting *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 520 (6th Cir. 1999) (per curiam)).

In this case, the Board found that Piper "acted in a juvenile, immature manner" in making and distributing the video that depicted the shooting of NetJets' DVD promoting the tentative agreement. However, the Board expressly rejected NetJets' characterization of the DVD as "the 'symbolic murder' of the Company officials who appeared on the DVD"; instead the Board found that the video "was clearly just an attack on the tentative agreement." Thus, according to the Board's finding of fact, which we must accept on review, NetJets' alleged concerns about Piper's potential for violence are based on a "misinterpretation" of the video.

Accepting the Board's finding that Piper's conduct was intended as a political statement against the tentative agreement, and not an act of violence or an implied threat of violence, there is simply no basis to support NetJets' contention that Piper's reinstatement is in violation of either aviation or workplace safety. The essence of the Board's arbitral decision was that this single incident of poor judgment did not constitute "just cause" for termination under the CBA. Whether we would agree with that interpretation of the CBA is beside the point; because the Board's interpretation of the "just cause" provision obviously does not violate public policy, the award would have to be enforced even if this court had the statutory authority to set aside the Board's award on public policy grounds.

For the foregoing reasons, the judgment of the district court denying NetJets' motion for summary judgment and granting summary judgment to the union is AFFIRMED.