19-1421-cv
*Barnard College v. Transport Workers Union of America*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of April, two thousand twenty.

PRESENT:    AMALYA L. KEARSE,
            JOHN M. WALKER, JR.,
            JOSÉ A. CABRANES,
                        *Circuit Judges.*

—————————————————————

BARNARD COLLEGE.,

                *Petitioner-Appellant,*                    19-1421-cv

        v.

TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO, LOCAL 264,

                *Respondent-Appellee.*

—————————————————————

**FOR PETITIONER-APPELLANT:**        DIANE WINDHOLZ, Christopher M. Repole, Jackson Lewis P.C., New York, NY.

**FOR RESPONDENT-APPELLEE:**        MATTHEW P. ROCCO, Rothman Rocco LaRuffa, LLP, Elmsford, NY.

Appeal from an April 11, 2019 judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

1

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be and hereby is **AFFIRMED**.

In March 2018, Petitioner-Appellant Barnard College ("Barnard") fired Orton Reynolds, a long-time public security officer on campus, after Reynolds engaged in what Barnard determined was sexual harassment. Reynolds, a member of Respondent-Appellee Transport Workers Union of America, AFL-CIO, Local 264 ("TWU"), sought review of his dismissal under the terms of the TWU's Collective Bargaining Agreement with Barnard, requesting reinstatement, with back pay and restoration of seniority and benefits. Pursuant to that Agreement, the case was submitted to a jointly appointed arbitrator, who ultimately determined that—despite Reynolds' "humiliat[ing] and hurt[ful]" behavior, App. 43—Barnard lacked just cause to terminate him, as termination was a disproportionate penalty for his conduct (in light of his employment record as it stood), and ordered that he be reinstated, but denied his requests for back pay, benefits, and accrual of seniority rights for the period between his firing and his reinstatement. In the District Court, Barnard challenged so much of the arbitral award as ordered Reynolds' reinstatement, but the Court determined that the arbitrator's ruling should be upheld. Barnard now challenges the reinstatement facet of the arbitral award again, seeking vacatur on the ground that that facet of the award violated a general public policy against sexual harassment in the workplace. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review a district court decision upholding or vacating an arbitration award *de novo* on questions of law." *Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 31 (2d Cir. 1997). We note that "a federal court's review of labor arbitration awards is narrowly circumscribed and highly deferential—indeed, among the most deferential in the law." *National Football League Management Council v. National Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016).

Among the circumstances in which we withhold such deference and may vacate an arbitral award is when that award violates some public policy. However, "[t]his so-called 'public-policy exception' [to judicial deference to arbitral awards] is extremely limited, and the party seeking the benefit of the exception must establish its existence." *Local 97, Intern. Broth. of Elec. Workers, A.F.L.-C.I.O. v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 125 (2d Cir. 1999). Indeed, our "task in reviewing an arbitral award for possible violations of public policy is limited to determining whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." *Intern. Broth. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998) (internal alterations and quotation marks omitted).

Here, we conclude that no such explicit conflict exists. It is certainly the case, as we have long noted, that "[t]he public policy against sexual harassment in the work place is well-recognized." *Newsday, Inc. v. Long Island Typographical Union, No. 915, CWA, AFL-CIO*, 915 F.2d 840, 844 (2d Cir.

2

1990). But we have only found that this public policy counsels against deference to an arbitral award when an arbitrator reinstates a terminated individual who had engaged in multiple acts of sexual harassment—including acts that had already served as the basis of prior arbitral rulings against that individual. *Id.* at 845. In such instances, reinstatement would indeed violate public policy, and vacatur of the arbitral award would be justified.

In the present case, however, Reynolds was being punished for only a single act, and public policy does not counsel as strongly against deference to the arbitral award. Although Barnard continues to imply that Reynolds was a repeat offender because at the time of the incident at issue here he was under separate investigation for unspecified allegations, at the time of the arbitration that investigation had not been completed, its findings were not part of Reynolds' employment record, and the arbitrator deemed that matter inappropriate for consideration. As the District Court concluded, it was thus proper for the arbitrator to consider Reynolds a first-time offender; and it was well within the province of the arbitrator to conclude that Barnard's immediate termination of Reynolds' employment for the single incident at issue was a penalty that was disproportionate.

That said, the arbitrator stated that "[t]here is no dispute regarding . . . the facts in the instant case," App. 43, and he found that Reynolds' conduct was impermissible and not to be taken lightly: "Did a violation occur—certainly. Was [the complainant] humiliated and hurt by Mr. Reynolds [sic] actions—certainly. Was Mr. Reynolds wrong to act the way he did—certainly. But did this transgression reach the level of termination—no." App. 43. As a suspension was more appropriate, the arbitrator concluded that Reynolds should be "returned to service as quickly as possible in line with Barnard's admission/readmission policy," but he ruled that Reynolds should "forfeit all back pay and lose seniority rights for the time spent on suspension." App. 43. It is undisputed that for that period—approximately a year between Reynolds' termination and the arbitral award—the arbitrator-approved penalty amounted to Reynolds' loss of approximately $80,000. Such punishment for a first established offense such as that here is consistent with a public policy that aims to eradicate sexual harassment from the workplace. We conclude that the arbitral award that emerged from the process sanctioned in the Collective Bargaining Agreement between the parties was properly upheld by the District Court.

## CONCLUSION

We have reviewed all of the arguments raised by Barnard on appeal and find them to be without merit. For the foregoing reasons, we **AFFIRM** the April 11, 2019 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

3