**File Name: 07a0180n.06**
**Filed: March 7, 2007**
**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**Case No. 05-6583**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| PETERBILT MOTORS COMPANY, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | **ON APPEAL FROM THE** |
| v. | ) | **UNITED STATES DISTRICT** |
| | ) | **COURT FOR THE WESTERN** |
| UAW INTERNATIONAL UNION, UNITED | ) | **DISTRICT OF TENNESSEE** |
| AUTOMOBILE, AEROSPACE AND | ) | |
| AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA; and UAW | ) | |
| LOCAL NO. 1832, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE:  BATCHELDER and MCKEAGUE, Circuit Judges; and ACKERMAN,[*] District Judge.

**ALICE M. BATCHELDER, Circuit Judge.**  The appellants, UAW International Union of United Automobile, Aerospace and Agricultural Implement Workers and UAW Local No. 1832 (collectively, the "union"), appeal the district court's decision granting summary judgment to the appellee, Peterbilt Motors Co. ("Peterbilt") in Peterbilt's action to vacate the arbitrator's award of benefits to union member, Delmas May.  Because we conclude that the grievance leading to the arbitrator's award of benefits was not arbitrable, we affirm the district court.

---

[*]The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

In 2001, May, who was a Peterbilt employee, requested benefits from Peterbilt's accident and sickness ("A&S") insurance provider and administrator, Prudential. Prudential initially approved May's request but later notified him that he had presented insufficient evidence to support a finding that he was unable to work. May filed an administrative appeal with Prudential, which Prudential denied, but in the letter denying the appeal, Prudential offered May the chance to submit additional medical evidence. May submitted no additional evidence, but the union submitted a second appeal on his behalf, which was also denied. Following an automobile accident, May died, and his estate did not complete the administrative appeals process.

In addition to assisting May with his administrative appeals, the union filed a grievance against Peterbilt on his behalf. The grievance alleged that Peterbilt had unjustly denied May accident and sickness benefits guaranteed by the CBA. Peterbilt and the union were unable to resolve the grievance, and the matter went to arbitration on. Despite Peterbilt's contention that the dispute was not arbitrable, the arbitrator ruled in May's favor. Peterbilt then sought an order from the district court vacating the arbitrator's decision. The district court granted summary judgment to Peterbilt, holding that the grievance was not arbitrable under the CBA and that the arbitrator's award did not draw its essence from the CBA. The union challenges both holdings on appeal.

Although we review the grant of summary judgment *de novo*, our review of arbitration awards is very limited. This circuit recently revisited the issue en banc, and after careful examination of the evolution of the judicial role with regard to arbitration, overruled the four-part inquiry we set out some twenty years ago in *Cement Divisions, National Gypsum Co. v. United*

2

*Steelworkers Local 135*, 793 F.2d 759 (6th Cir. 1986).[1] *See Mich. Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*, -- F.3d --, 2007 Fed. App. 0040P (6th Cir. Jan. 26, 2007). Rather, we held that we must

> consider the questions of 'procedural aberration' that *Misco*[2] and *Garvey*[3] identify. Did the arbitrator act 'outside his authority' by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator 'arguably construing or applying the contract'?

*Id.* at *5. We explained that we will find that the arbitrator was "arguably construing the contract" so long as "the arbitrator appeared to be engaged in interpretation" of the contract. *Id.* But we acknowledged that

> we cannot ignore the specter that an arbitration decision could be so 'ignorant' of the contract's 'plain language,' as to make implausible any contention that the arbitrator was construing the contract. An interpretation of a contract thus could be so untethered to the terms of the agreement . . . that it would cast doubt on whether the arbitrator indeed was engaged in interpretation.

*Id.* at *6 (internal citations and edits omitted).

In the case before us, the arbitrator acknowledged that Prudential was not subject to the arbitration provision of the CBA, and that Prudential's denial of A&S benefits to May was therefore not arbitrable. The arbitrator went on to find, however, that the CBA imposed a separate and independent obligation on Peterbilt to pay A&S benefits to May, and that Peterbilt's failure to

---

[1]In *Cement Divisions*, 793 F.2d at 766, we had held that "[a]n award fails to derive its essence from the agreement when (1) an award conflicts with express terms of the collective bargaining agreement; (2) an award imposes additional requirements that are not expressly provided in the agreement; (3) an award is without rational support or cannot be rationally derived from the terms of the agreement; and (4) an award is based on general considerations of fairness and equity instead of the precise terms of the agreement."

[2]*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29 (1987).

[3]*Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001).

comply with this obligation was properly subject to arbitration. The district court found it clear that Prudential had the authority to determine eligibility for A&S benefits; that Prudential, because it was not a party to the CBA, was not subject to arbitration; and that absent a separate and independent obligation on the part of Peterbilt to pay those benefits, the grievance was not arbitrable. The district court held that the arbitrator had exceeded his authority in finding that the grievance was arbitrable because the plain language of the CBA could not support a finding that Peterbilt had a separate and independent obligation to pay A&S benefits in addition to those payable by Prudential to employees it determined were eligible for benefits under the A&S insurance listed in the CBA. Therefore, the district court concluded, the arbitrator's award did not draw its essence from the CBA.

The issue before us here is whether, under the standard adopted by this circuit in *Michigan Family Resources*, the arbitrator's award must be enforced. We answer that question in the negative.

Because Peterbilt acquiesced in having the question of arbitrability determined by the arbitrator – rather than seeking a judicial determination of that threshold issue – we must review the arbitrator's determination on arbitrability under the same standard we use to review the merits of the dispute. *Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1140 (6th Cir. 1990). Although the federal courts without question indulge in a presumption in favor of arbitration, *see Michigan Family Res.*, 2007 Fed. App. 0040P at *3 (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 547, 582-83 (1960)), the arbitrator, in determining arbitrability, is constrained by the principle that a party may not be forced to arbitrate any dispute that it has not, by contract, obligated itself to arbitrate. *United Steelworkers v. Mead Corp.*, 21 F.3d 128, 131 (6th Cir. 1994). And the merits of the underlying claim are not relevant to that determination. *Id.*

The arbitrator and the district court agreed that the dispute between May and Prudential was

not arbitrable because Prudential was not a party to the CBA. That conclusion is clearly correct. So the question we must resolve is whether, in determining that Peterbilt had an obligation to pay A&S benefits to May other than those which Prudential denied him, "the arbitrator act[ed] 'outside his authority' by resolving a dispute not committed to arbitration." *Michigan Family Res.*, 2007 Fed. App. 0040P at *5. And that question requires us to confront squarely the question of whether – because the arbitrator also determined whether the dispute *was*, in fact, committed to arbitration – in making the latter determination the arbitrator was "arguably construing the contract," *id.* at *6, or simply rendered a decision "so 'ignorant' of the contract's 'plain language,' as to make implausible any contention that the arbitrator was construing the contract." *Id.* (edits omitted).

The whole point of the presumption in favor of arbitration is to give substance to the parties' agreement that they will accept the arbitrator's view of the facts and the meaning of the contract. And where, as here, the parties have submitted to the arbitrator the issue of arbitrability, without reserving any right to have that issue judicially determined, we must conclude that they expect to be bound by the arbitrator's interpretation of the contract with respect to its arbitration clause. But that cannot mean that the arbitrator is free to invent contract provisions that will support a finding of arbitrability, which is what we conclude occurred here.

This CBA includes an arbitration clause requiring arbitration of controversies arising between "the Company" (Peterbilt) and "the Union or an employee." Because Prudential is neither, any dispute between a party to the CBA and Prudential is not covered by this arbitration clause. The arbitrator, having correctly arrived at that conclusion, determined that if Peterbilt could be found to have some contractual obligation under the CBA to provide benefits other than those required by the ERISA plan that Prudential insured and administered, then May's grievance could be construed to

5

be against Peterbilt, and would therefore be arbitrable.

The arbitrator then turned to the provisions of the CBA governing health and welfare benefits: Article 22.01 and its attached Schedule C. Article 22.02, in pertinent part, provides: "The Company agrees to provide all eligible employees the health and welfare benefits listed in Schedule C, attached hereto and made a part of this Agreement." Schedule C – titled "Group Insurance" – is a listing of all of the benefits that are to be provided to employees who are members of the group insurance plans, and includes Accident and Sickness Insurance. Schedule C explicitly provides, in bold capital letters:

> **THE INFORMATION PRESENTED IN SCHEDULE C IS ONLY A SUMMARY. COMPLETE DETAILS OF THE BENEFITS, BENEFIT PAYMENTS AND CONDITIONS FOR PAYMENT ARE CONTAINED IN THE PLAN DOCUMENTS. IF THERE ARE ANY INCONSISTENCIES BETWEEN THIS SUMMARY AND THE PLAN DOCUMENTS, THOSE DOCUMENTS ARE THE FINAL AUTHORITY.**

The arbitrator concluded from these provisions that the CBA in fact obligated Peterbilt to pay A&S benefits in addition to any A&S insurance under the plan administered by Prudential. This obligation, the arbitrator announced, was independent of the ERISA plan obligations and therefore May's grievance was against Peterbilt and subject to arbitration.

We are acutely aware of our obligation to defer to the arbitrator's interpretation of the CBA. We find, however, that the arbitrator's interpretation of this contract is both "so 'ignorant' of the contract's "plain language," as to make implausible any contention that the arbitrator was construing the contract" and "'so untethered to' the terms of the agreement" that it does in fact "cast doubt on whether the arbitrator indeed was engaged in interpretation." *Michigan Family Res.* at *6. This is not simply a serious arbitral error that we should hold binding on Peterbilt because serious errors are

a risk inherent in arbitration. This is a determination without any basis in the contract that the dispute is one that is subject to the arbitration to which Peterbilt agreed.

For the foregoing reasons, we **AFFIRM** the judgment of the district court vacating the award of the arbitrator.