**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0555n.06
Filed: August 8, 2007

No. 06-2316

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, Local 174, | ) ) ) ) ) ) ) | **ON APPEAL** FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| | ) | **O P I N I O N** |
| MICHIGAN MECHANICAL SERVICES, INCORPORATED, | ) ) ) | |
| Defendant-Appellant. | ) ) ) | |

Before: KEITH, MOORE, and COLE, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Michigan Mechanical Services, Inc. ("MMSI") appeals from the district court's order granting summary judgment to Plaintiff-Appellee International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 174 ("the Union"). After receiving information that employees were using drugs and alcohol while on the job, MMSI ordered five employees, including Richard Hilton ("Hilton"), to take a drug test. Hilton refused, and MMSI fired him. Hilton filed a grievance, and an arbitrator determined that MMSI did not have sufficient justification under the collective bargaining agreement and other relevant contractual provisions to fire Hilton for refusing to take a

drug test. The arbitrator concluded that Hilton should be reinstated with back pay, minus a three-day disciplinary suspension. MMSI did not reinstate Hilton, and the Union filed suit in the district court to enforce the arbitrator's award. The district court granted the Union's motion for summary judgment. Because the arbitrator's decision shows that the arbitrator was at least arguably construing the relevant contractual provisions, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On behalf of its members, the Union negotiated a collective bargaining agreement with MMSI that took effect April 5, 2003. The Union and MMSI separately negotiated "Personal Conduct Rules," which the collective bargaining agreement incorporated by reference. MMSI also maintained a "Substance Abuse Policy," a "Disciplinary Action Schedule," and "General Safety Rules and Procedures."[1]

The Personal Conduct Rules first set forth MMSI's disciplinary procedures. "The Company will investigate each violation and decide what discipline is appropriate based on the severity of the offense, the employee's past record, and the penalties imposed in similar situations." Joint Appendix ("J.A.") at 138 (Personal Conduct Rules at 1). MMSI follows a progressive discipline policy. "Progressive discipline generally starts with (1) an oral warning, followed by (2) a written warning, (3) a final written warning, (4) a 3-day suspension, and (5) discharge." *Id.* The Personal Conduct Rules further state, however, that "[t]he Company will depart from these progressive discipline steps when it determines that it is appropriate under the circumstances." *Id.*

---

[1] It is not clear from the materials in the Joint Appendix whether or how these MMSI policies are incorporated into the collective bargaining agreement, but neither party argues that they do not apply to MMSI employees.

2

The Personal Conduct Rules also list a number of "immediate discharge" rules, violation of which "will usually result in immediate discharge." *Id.* The seventh of these immediate discharge rules is "[i]nsubordination or refusal to follow a direct order from a supervisor, including refusal to take a required drug test." J.A. at 139 (Personal Conduct Rules at 2). Notably, the Personal Conduct Rules mention the existence of the Substance Abuse Policy and the General Safety Rules and Procedures and then state that "[i]f these rules in any way conflict with these other policies, these rules govern." J.A. at 138 (Personal Conduct Rules at 1).

The Substance Abuse Policy, Disciplinary Action Schedule, and General Safety Rules and Procedures contain related provisions. The Substance Abuse Policy states, in relevant part:

> Refusal - All employees who refuse to take a substance screening will be subject to disciplinary action:
> 1st refusal - 3 days off
> 2nd refusal - Voluntary termination.
> Once an employee has had a confirmed positive substance screening, they may not refuse to take a substance screening at a future date. Refusal will be considered a voluntary quit.

J.A. at 144 (Substance Abuse Policy). The Disciplinary Action Schedule lists two possible penalties for "Insubordination, refusal to do as instructed"—discharge or a written warning—"[d]epending upon the severity of the offense and other facts in the case." J.A. at 135-36 (Disciplinary Action Schedule). The Disciplinary Action Schedule also lists discharge as the penalty for "Improper use, possession or selling of alcohol or a controlled Substance on company property; Reporting to or working under the influence of either," *id.* at 135, as does the General Safety Rules and Procedures, although neither lists a penalty specifically for a refusal to take a drug test.

In November 2004, Scott Smith ("Smith"), president of MMSI, received an anonymous phone call reporting that MMSI employees were using drugs and alcohol on the job. Soon thereafter,

3

on December 8, 2004, an unnamed MMSI employee told Smith that he had witnessed five MMSI employees, including Richard Hilton, smoking marijuana on the job, both while those employees were working on location at customer facilities and while working at MMSI facilities. Smith decided to have the five employees tested for drugs.

On Friday, December 10, 2004, Smith called four of the five employees to the MMSI conference room; the fifth was absent from work that day. Smith ordered them to take a drug test. Two of the four employees present submitted to a drug test at that time, and a third, whose shift had just ended, took the test later that day after first leaving to pick up his son from school. The fifth employee, who was absent from work on December 10, took the test on Monday, December 13. Hilton, however, refused to take the test and left the MMSI facility.

Smith testified that he intended to fire all five employees, but decided first to speak with them after receiving the results of the drug tests. One employee denied using drugs and tested negative, and Smith reinstated him. Three other employees admitted using drugs, although at least some of their drug tests were also negative.[2] Because "all showed remorse and promised they would refrain from future violations," J.A. at 13 (Arbitration Decision at 2), Smith reinstated them as well, albeit under the conditions that they serve a probationary period, receive no back pay, subject themselves to random drug tests, and not retaliate against the unnamed employee who reported them to Smith. Hilton, however, maintained that he had been falsely accused and that he had a right under the collective bargaining agreement to refuse the test. Smith fired Hilton, assertedly because Hilton

---

[2]It is not clear from the record which employees, if any, tested positive for drugs. The arbitrator's decision states only that "some of the tests were negative," J.A. at 13 (Arbitration Decision at 2), and nothing in the record explicitly identifies any particular employees as having tested positive.

refused to take the drug test, was defiant, was not remorseful, and was not as good an employee as the other four employees implicated.

Hilton filed a grievance, arguing that the MMSI Substance Abuse Policy called for only a three-day suspension for refusing to take a drug test, not termination of employment. Pursuant to the collective bargaining agreement between MMSI and the Union, Hilton's grievance was submitted for arbitration. On August 10, 2005, following a hearing, the arbitrator determined that MMSI did not have sufficient evidence to conclude that Hilton used marijuana on the job, a determination that MMSI does not contest on appeal. The arbitrator further determined that MMSI did not have sufficient justification under the Personal Conduct Rules, Substance Abuse Policy, Disciplinary Action Schedule, and General Safety Rules and Procedures to fire Hilton for refusing to take a drug test. The arbitrator concluded that Hilton should be reinstated with back pay, minus a three-day disciplinary suspension.

On October 21, 2005, the Union filed a complaint in the federal district court, alleging that MMSI had failed to reinstate Hilton and seeking an order from the district court requiring MMSI to abide by the arbitrator's decision. The Union filed a motion for summary judgment, MMSI filed a response, the Union filed a reply, and MMSI filed a surreply. On September 5, 2006, the district court entered an order granting the Union's motion for summary judgment. MMSI timely appealed.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's order granting summary judgment in an arbitrated labor dispute. *UAW v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002). Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no

5

genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); FED. R. CIV. P. 56(c).

## B. Arguably Construing the Collective Bargaining Agreement

MMSI argues that the arbitrator misinterpreted the collective bargaining agreement, Personal Conduct Rules, Substance Abuse Policy, Disciplinary Action Schedule, and General Safety Rules and Procedures in concluding that MMSI did not have sufficient justification to fire Hilton for refusing to take a drug test. As we have recently clarified, the scope of federal-court review of an arbitration decision consists of a very limited set of inquiries:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

*Mich. Family Res., Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir.) (en banc), *cert. denied*, --- U.S. ---, 127 S. Ct. 2996 (2007). In this case, the first two inquiries are not at issue. MMSI argues only that the arbitrator misinterpreted the relevant contractual provisions, a question of law in the context of an arbitrated labor dispute. *See MidMichigan Reg'l Med. Ctr.- Clare v. Prof'l Employees Div. of Local 79, Serv. Employee Int'l Union*, 183 F.3d 497, 501 (6th Cir. 1999).

As we explained in *Michigan Family Resources*, the arbitrator's award must be upheld so long as the arbitrator was "arguably construing" the relevant contractual provisions, even if we believe that the arbitrator's interpretation was in error. *Mich. Family Res.*, 475 F.3d at 753; *see also Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("[I]f an arbitrator is

6

even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotation marks omitted)). "[I]n most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that." *Mich. Family Res.*, 475 F.3d at 753. However, in rare cases, "an arbitration decision could be so 'ignor[ant]' of the contract's 'plain language' as to make implausible any contention that the arbitrator was construing the contract." *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)) (alteration in original).

Like the arbitration decision at issue in *Michigan Family Resources*, the arbitration decision at issue here "has all the hallmarks of interpretation." *Id.* at 754. The arbitrator first discussed the provisions of the Disciplinary Action Schedule and the General Safety Rules and Procedures related to possession, use, or sale of drugs, noting that they did not address refusals to take drug tests. Next, the arbitrator discussed the rule prohibiting insubordination found in the Disciplinary Action Schedule, stating that the penalty depended on the severity of the offense and reasoning that the severity of Hilton's offense did not justify discharge. Finally, the arbitrator discussed the Personal Conduct Rules and Substance Abuse Policy. He noted that "[t]he Personal Conduct Rules state that violation of the insubordination rule will generally result in immediate discharge. That suggests that exceptions to the rule are possible." J.A. at 18 (Arbitration Decision at 7). Given the possibility of exceptions, the arbitrator reasoned that discharge was too severe a penalty in light of Hilton's reliance on the Substance Abuse Policy's call for a three-day suspension and the reinstatement of three employees "who admitted the more serious offense of substance abuse while at work." J.A. at 18-19 (Arbitration Decision at 7-8). Like the arbitrator whose decision was at issue in *Michigan*

7

*Family Resources*, the arbitrator whose decision is at issue here "refer[red] to, quote[d] from and analyze[d] the pertinent provisions of [the collective bargaining agreement, Personal Conduct Rules, Substance Abuse Policy, Disciplinary Action Schedule, and General Safety Rules and Procedures], and at no point d[id] he say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of [the relevant contractual provisions]." *Mich. Family Res.*, 475 F.3d at 754.

Moreover, it does not appear that the language of the relevant contractual provisions so clearly dictated a different outcome "as to make implausible any contention that the arbitrator was construing the contract." *Id.* at 753. As the arbitrator noted, the Personal Conduct Rules state that a violation of an immediate discharge rule will "usually" and "generally" result in immediate discharge, not always. J.A. at 138 (Personal Conduct Rules at 1). This language, together with the provisions of the Substance Abuse Policy and Disciplinary Action Schedule calling for multiple possible penalties and the less severe penalties imposed upon three other employees for arguably more serious conduct, support the arbitrator's conclusion that discharge was not mandatory and may not have been justified in Hilton's situation.

MMSI argues that the Personal Conduct Rules do provide for exceptions, but that those exceptions are in MMSI's sole discretion because the Personal Conduct Rules state that "[t]he Company will depart from these progressive discipline steps when *it* determines that it is appropriate under the circumstances." J.A. at 138 (Personal Conduct Rules at 1) (emphasis added). However, the Personal Conduct Rules also arguably limited MMSI's discretion, stating that "[t]he Company will investigate each violation and decide what discipline is appropriate based on the severity of the offense, the employee's past record, and the penalties imposed in similar situations." J.A. at 138

8

(Personal Conduct Rules at 1); *cf. Bruce Hardwood Floors v. S. Council of Indus. Workers*, 8 F.3d 1104, 1108 (6th Cir. 1993) (concluding, before our decision en banc in *Michigan Family Resources*, that two clauses that "provide[d] for potential alternative remedies" and another clause that required the employer to take into account mitigating or aggravating circumstances "created sufficient basis for the arbitrator to conclude that he had the authority to review the penalty imposed"). The arbitrator here explicitly took into account the severity of the offense and the penalties imposed in the arguably similar situations of the three other employees, exactly what the Personal Conduct Rules required MMSI to take into account.

Furthermore, even if we were to accept MMSI's argument that, under the Personal Conduct Rules, exceptions are in MMSI's sole discretion and cannot be ordered by the arbitrator, the relevant contractual provisions still do not so clearly dictate a different outcome as to call into question the arbitrator's decision. By maintaining the Substance Abuse Policy's provision calling for a three-day suspension for an employee's first refusal to take a drug test, MMSI could be said to have exercised its discretion and to have made a blanket exception to its immediate discharge rule for refusing to take a drug test. Although the Personal Conduct Rules govern if they conflict with the Substance Abuse Policy, there is arguably no conflict—the Personal Conduct Rules allow for exceptions, and the Substance Abuse Policy could be read to set forth one set of exceptions. Of course, we need not decide whether this possible interpretation would be correct. Given the possibility of such an interpretation, it can hardly be said that the relevant language is so clear that it is "implausible . . . that the arbitrator was construing the contract," *Mich. Family Res.*, 475 F.3d at 753, in concluding that discharge was not justified in part because Hilton relied on the Substance Abuse Policy. Because the arbitrator was at least arguably construing the relevant provisions of the collective

9

bargaining agreement, Personal Conduct Rules, Substance Abuse Policy, Disciplinary Action Schedule, and General Safety Rules and Procedures in reaching his decision, we must uphold the arbitrator's award.

### III. CONCLUSION

Because the arbitrator's decision shows that the arbitrator was at least arguably construing the relevant contractual provisions, we **AFFIRM** the judgment of the district court.