NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0331n.06
Filed: May 15, 2009

No. 08-3616

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

COLUMBIA GAS OF OHIO, INC.,

    Plaintiff-Appellant,

       v.

UTILITY WORKERS UNION OF AMERICA,
LOCAL 349,

    Defendant-Appellee.

On Appeal from the United
States District Court for the
Northern District of Ohio at
Toledo

_____/

**Before:**    **GUY, ROGERS, and GRIFFIN**, Circuit Judges.

    **RALPH B. GUY, JR., Circuit Judge.**    Plaintiff Columbia Gas of Ohio, Inc.,

appeals from the district court's entry of judgment in favor of defendant Utility Workers

Union of America, Local 349, confirming the arbitration award that reinstated the grievant

William Rose—without back pay or benefits but also with no loss of seniority—to his prior

position as a service technician. On appeal, plaintiff contends that the district court erred by

refusing to vacate the award on the grounds that its enforcement would violate public policy.

*See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766 (1983); *E. Associated Coal

Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62-67 (2000). After review of

the record and the arguments presented on appeal, we affirm the judgment confirming the award.

**I.**

Columbia Gas is a public utility that provides natural gas services to customers in the Toledo area. When a customer reports a possible gas leak, Columbia sends a service technician to check the integrity of the system. If a leak is found in the line running between the curb and the residence, the technician turns the gas off and directs the customer to hire a plumber to make the repairs. The Department of Transportation (DOT) requires that such repairs be made by or under the supervision of a plumber who is certified to do that work (an "outside qualified" or "OQ" plumber). When the repairs are complete, Columbia sends a service technician to visually inspect the repair, pressure test the line, and restore gas service. Only then may the outside plumber backfill the excavation.

Columbia permitted its service technicians to "moonlight," including providing the outside services that Columbia did not, subject to restrictions governing potential conflicts of interest. Various notices to its employees identified the activities that could be considered a conflict of interest, including, specifically, any solicitation or referral of outside work to oneself or any other party, and performing the follow-up inspection of an employee's own outside work. Rose, like several other of Columbia's service technicians, was a certified OQ plumber. He performed outside line repair services for Columbia's customers over a period of more than twenty years, and was the Union's long-time president.

In the spring of 2006, Columbia received several complaints suggesting there had

been violations of its anti-solicitation and independent inspection policies. The investigation that followed initially resulted in the discharge of eleven Columbia employees, although seven of them were reinstated under "last chance" agreements after a one-month suspension. Those seven had been discharged for falsely reporting that they had made visual inspection of outside line repairs performed by the other four technicians when, in fact, they had not because the trenches had been backfilled already and they had not insisted that the trenches be re-excavated. The other four technicians—Jeff Christian, Rick Radde, Mark Gallaher, and William Rose—often performed outside line repair work together. Rose was charged with "engag[ing] in impermissible and unethical behavior, which had the potential to expose the Company to safety implications, as well as regulatory and civil liability," and, more specifically, for "referr[ing] a customer to coworkers during the course of the workday for the purpose of performing after-hours natural gas jobs for personal gain." Rose declined an offer to retire with full benefits, and was discharged. Rose filed an unsuccessful grievance, and the Union made a timely request for arbitration.

After a hearing conducted over three days, the arbitrator issued a 58-page decision finding, *inter alia*, that Columbia failed to present any evidence that Rose had solicited customers for himself or others to perform the outside repair work. The arbitrator also found, however, that Columbia had proved: (1) that Rose had on one occasion performed some work on a job repairing a line that he had taken out of service in violation of the conflict-of-interest rules; and (2) that Rose violated company policy and DOT regulations on twelve occasions by backfilling trenches and restoring service before a Columbia technician had

inspected and tested the repairs. With respect to the latter—which is most pertinent to the public policy challenge—Rose offered explanations for why he did not wait for the inspection, including not wanting to leave residents without heat and being concerned about the hazards presented by an open trench. Rose also conceded, however, that he should not have done this, and that his conduct placed his coworkers in the untenable situation of having to report him, insist that he re-excavate the line to conduct the inspection, or falsify the inspection report. Later excavation at one residence revealed that the repair had not been performed properly because it had not included the installation of an anode to prevent corrosion. In ordering reinstatement, the arbitrator stated:

> Taking into consideration that these violations were the first of their kind to be made the subject of discipline, and Mr. Rose's long period of service, but not overlooking his 2005 suspension for falsification of his Daily Work Assignment log [to reflect that he was at a site when he was not], the Arbitrator finds that the Grievant is entitled to reinstatement to his former position without loss of seniority, but without back pay or accrual of other benefits during the period of his separation from service.

This award, if enforced, effectively converts the discharge to a 14-month suspension without pay or the accrual of benefits.

Columbia Gas promptly filed this action seeking to vacate the arbitration award, and the Union counterclaimed for confirmation of the award. Cross-motions for summary judgment were filed, and the district court concluded that Columbia Gas failed to demonstrate that enforcement of the award would violate public policy. Judgment was entered in favor of the Union, and this appeal followed.

**II.**[1]

Although a decision to grant summary judgment is reviewed *de novo*, "courts play only a limited role when asked to review the decision of an arbitrator." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987). When, as here, there is no claim that the arbitrator acted outside his authority, the arbitrator's award must be treated as if it represents a contractual agreement between the employer and union as to the meaning of the collective bargaining agreement. *E. Associated Coal*, 531 U.S. at 62. "[A] court's refusal to enforce an arbitrator's *interpretation* of such contracts is limited to situations where the contract as interpreted would violate some explicit public policy that is well defined and dominant," which, in turn, must be "ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Misco*, 484 U.S. at 43 (internal quotation marks and citation omitted); *see also E. Associated Coal*, 531 U.S. 62. Whether the contract, as interpreted by the arbitrator, is contrary to public policy is a question to be resolved by the courts. *Misco*, 484 U.S. at 43.

A.    **Explicit Public Policy**

Columbia relies, as before, on the Pipeline Safety Act and its stated purpose of providing "adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 60102(a)(1). More specifically, the Act

---

[1]Columbia Gas concedes that the grievance was arbitrable and does not argue that the award fails to "draw its essence" from the contract. *See Mich. Family Res. v. Serv. Employees Local 517M*, 475 F.3d 746, 750-53 (6th Cir.) (*en banc*), *cert. denied*, 127 S. Ct. 2996 (2007).

requires that an operator of a pipeline facility (1) ensure that employees who operate and maintain the facility are qualified to do so (49 U.S.C. § 60102(a)(3)); and (2) develop a qualification program to ensure that individuals who perform covered tasks are qualified to do so (49 U.S.C. § 60131(a)). Columbia also relies on the federal regulations that require pipeline joints to be capable of resisting expansion and contraction (49 C.F.R. § 192.273), and that provide testing standards for service lines and plastic pipelines (49 C.F.R. §§ 192.511 and 192.513). As for state law, Ohio has adopted the federal gas pipeline regulations (Ohio Admin. Code § 4901:1-16-03), and has granted civil enforcement power to its public utilities commission (Ohio Rev. Code § 4905.95(B)(1)(b)). In addition, Ohio imposes vicarious liability on natural gas operators by imputing to them the acts and omissions of employees acting within the scope of their employment (Ohio Rev. Code § 4905.93).

The district court found that these laws and regulations, taken together, serve public policy purposes of ensuring the safe operation of natural gas pipelines, ensuring that employees are trained and qualified, and holding pipeline operators liable for errors and misconduct by employees acting within the scope of their employment. The parties accept this determination and focus instead on whether it would violate public policy to enforce the arbitration award in this case.

## B. "Contrary to"

Columbia Gas argues that the district court erred by improperly narrowing the public policy exception to only those situations in which a statute or regulation expressly bars

reinstatement of an employee who violates it. The employer in *Eastern Associated Coal* argued similarly that the district court had "erred by asking, not whether the award is 'contrary to' public policy 'as ascertained by reference' to positive law, but whether the award 'violates' positive law." 531 U.S. at 63. The Court stated, as Columbia repeatedly emphasizes, that "in principle, [the] courts' authority to invoke the public policy exception is not limited solely to instances where the arbitration award itself violates positive law." *Id.*, *but see id.* at 67-68 (Scalia, J., concurring) (criticizing statement as dictum). In the next sentence, not quoted by Columbia, the Court added: "Nevertheless, the public policy exception is narrow and must satisfy the principles set forth in *W.R. Grace* and *Misco*." *Id.* In this case, the district court properly analyzed the award in relation to the explicit public policy on which Columbia relied.

The Supreme Court has made clear that the pertinent question at this juncture is whether the contract, as interpreted—*i.e.*, a contractual agreement to suspend rather than discharge Rose—falls "within the legal exception that makes unenforceable 'a collective-bargaining agreement that is contrary to public policy.'" *Id.* at 62 (quoting *W.R. Grace*, 461 U.S. at 766.) We are also mindful of the Court's further admonition that the issue is not whether the grievant's *conduct* violates public policy, but whether enforcement of the contract, as interpreted, would be contrary to public policy. *Id.* at 62-63; *see also Interstate Brands Corp. v. Teamsters Local Union No. 135*, 909 F.2d 885, 893 (6th Cir. 1990); *NetJets Aviation, Inc. v. Int'l Bhd. of Teamsters*, 486 F.3d 935, 939 (6th Cir. 2007).[2]

_____

[2]This distinction is illustrated by our decision in *Shelby County Health Care Corp.v. AFSCME, Local 1733*, 967 F.2d 1091 (6th Cir. 1992). There, a pharmacy technician was discharged for her role in

While obviously not involving the same public policy, the Supreme Court's decision in *Eastern Associated Coal* confirming an arbitration award reinstating an employee truck driver who had twice tested positive for marijuana is instructive. The Court assumed that the contract, as interpreted, required reinstatement, and asked whether such an agreement was contrary to public policy. The employer identified laws and regulations reflecting public policy against drug use by transportation workers in safety-sensitive jobs, requiring random drug testing to detect such use, and mandating suspension for driving a commercial vehicle while under the influence of drugs.

Other provisions, however, encouraged rehabilitation and specified the conditions under which a driver who tested positive for drugs could return to a safety-sensitive position. The fact that the regulations did not require employers to provide rehabilitation or hold a job open for a driver who tested positive reflected "basic background labor law principles" that "caution against interference with labor-management agreements about appropriate employee discipline." 531 U.S. at 65. In concluding that the arbitration award was not "contrary to" these policies, taken together, the Court explained that the award did not condone the employee's conduct or ignore the risks to the public, but punished him with a suspension without pay, required that he pay costs, and imposed further conditions of continued

---

a strike that violated 29 U.S.C. § 158(g)'s prohibition of strikes by health care workers unless at least ten days' prior notice is given. An employee who engages in a strike in violation of the notice requirement loses the protections normally afforded striking workers unless and until she is reemployed. 29 U.S.C. § 158(d). Although these provisions were found to set out a well-defined statement of public policy, that policy was actually to vest the employer with the discretion to discharge or retain the employee. Since the employer had agreed in a settlement with the union that disciplinary decisions based on illegal strike activity would be subject to the grievance and arbitration procedures in the collective bargaining agreement, the court found that the award was not contrary to public policy.

employment. The Court found not only that the award did not violate a specific provision of any law or regulation, but also that it was consistent with the explicit public policies at issue.

Here, Columbia argues that the award violates public policy by requiring Columbia to reinstate an employee who, while trained and qualified, deliberately violated federal and state regulations on twelve occasions by backfilling the trenches and restoring service before independent inspection and testing could be performed. Columbia protests that to require reinstatement of such a person would force it to risk compromising public safety and would expose it to possible liability for future misconduct. While there is no dispute that Rose's *conduct* violated public policy, the relevant inquiry is whether enforcement of the contractual agreement to reinstate Rose with a 14-month suspension would violate public policy.

Columbia Gas relies heavily on two decisions in which an arbitrator's reinstatement violated public policy. In one, a pilot flew a passenger aircraft while drunk, and, in the other, a nuclear power plant machinist deliberately disabled the secondary containment security locks so as to beat the lunch rush. *Delta AirLines, Inc. v. Air Line Pilots Ass'n Int'l*, 861 F.2d 665 (11th Cir. 1988); *Iowa Elec. Light & Power Co. v. IBEW Local 204*, 834 F.2d 1424 (8th Cir. 1987). Aside from the superficial similarity that these cases involved "safety-sensitive" positions, material differences in the public policy and the risk of danger presented by the misconduct distinguish them from the case at bar.[3]

---

[3]This court has identified *Delta AirLines* and *Iowa Electric* as two rare instances in which an arbitration award has been vacated for public policy reasons. *Local 1985, Int'l Bhd. of Elect. Workers v. Hoover Co.*, Nos. 95-3475/3517, 1996 WL 506511 at *1 (6th Cir. Sept. 5, 1996). Also, we noted in *Interstate Brands* that the Ninth Circuit criticized both cases as inconsistent with *Misco* and declined to

The court in *Delta AirLines* viewed the award as representing a contractual agreement that operating a passenger aircraft while visibly drunk did not constitute just cause for discharge. Relying on near universal laws against such conduct, including criminal statutes, the court found that the award, if enforced, "would violate clearly established public policy which condemns the operation of passenger airliners by pilots who are under the influence of alcohol." 861 F.2d at 671. The laws created a more dominant policy than in this case, and the misconduct at issue meant that reinstatement presented a greater potential for danger than in this case.

In *Iowa Electric*, the discharged employee worked within the secondary containment area of a nuclear power plant that was kept pressurized by a series of interlock doors that could only open one at a time. Wanting to leave the shop to get to lunch early, the machinist found the door was locked, ascertained that an outside door was open, and was specifically denied permission to disable the locks by an engineer in the control room. The machinist nonetheless directed someone to remove a fuse that disabled all of the locks so he could get through. In vacating the arbitration award, the court relied not only on "a well defined and dominant national policy requiring strict adherence to nuclear safety rules," but also on the fact that the discharge was reviewed and approved by the Nuclear Regulatory Commission. 834 F.2d at 1427. The circumstances in this case, while also involving a safety-sensitive position, are more like the circumstances in three other cases in which courts refused to vacate an arbitration award that reinstated an employee who violated applicable safety

---

follow them. 909 F.2d at 894 n.11 (discussing *Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173*, 886 F.2d 1200 (9th Cir. 1989) (en banc)).

regulations. *See MidAmerican Energy Co. v. Int'l Bhd. of Elec. Workers Local 499*, 345 F.3d 616 (8th Cir. 2003); *MidMichigan Reg'l Med. Ctr. v. Prof'l Employees Div. of Local 79*, 183 F.3d 497, 505-06 (6th Cir. 1999); *Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen & Oilers, Local 112*, 687 F.2d 673 (3d Cir. 1982).

In *MidAmerican Energy*, the Eighth Circuit distinguished its earlier decision in *Iowa Electric* and held that an arbitrator's reinstatement of an employee who disabled forty monitoring and safety devices at a liquid natural gas storage facility and left the facility unattended for several hours did not violate public policy for two reasons. First, although the employee's actions violated company rules and state and federal regulations, the court held that the public policy was not akin to the public policy at issue in *Iowa Electric* or other cases that have led courts to decline to enforce an arbitrator's award that requires outright reinstatement. 345 F.3d at 620. Second, the award did not require MidAmerican to reinstate him to a position in which he would be without direct supervision or the safety and security of the facility would be left in his hands.

While the award in this case ordered Rose's reinstatement as a service technician, like *MidAmerican*, the safety concerns presented by his misconduct in circumventing independent inspection and testing of his repair work do not establish the kind of public policy that would be violated by an agreement to reinstate him after a 14-month suspension without pay. That is not to say, however, that the arbitrator could not have found just cause, or that future misconduct would not be subject to discipline or discharge, only that the award is not unenforceable as a violation of public policy.

Next, in what the district court saw as providing the closest factual analogy to this case, the court in *Kane Gas* declined to vacate an arbitration award that reinstated a gas company employee who, through "reckless inadvertence," improperly turned off a main valve and cut off natural gas service to an entire borough on a day that had subzero temperatures. Decided without the benefit of *W.R. Grace* and *Misco*, the court recognized that it could decline to enforce an award on the grounds that it was inconsistent with public policy and held that an award is inconsistent with public policy when it would condone violation of federal or state law. 687 F.2d at 681-82. Kane Gas argued that the misconduct violated federal law and state public policy, which imposed the highest degree of care practicable on operators providing natural gas service. Finding otherwise, the court concluded that reinstatement of this employee did not amount to judicial condonation of illegal acts because, by imposing a thirty-day disciplinary suspension, the award did not let his actions go unpunished. Similarly, the award in this case did not condone Rose's violations or allow his misconduct to go unpunished.

Finally, Columbia Gas rightly argues that because the misconduct at issue in *MidMichigan Regional Medical Center* involved negligence, it is not comparable to Rose's deliberate disregard of federal and state regulations.

More pertinent to this case, however, is that the hospital also argued that the award violated public policy by forcing it to reemploy a nurse who may expose the hospital to liability in the future. Rejecting this as a basis to vacate the award, this court explained that in negotiating an agreement, "an employer must weigh potential liability costs, vicarious or

direct, against the other costs and benefits of the bargain." *MidMichigan*, 183 F.3d at 505-06.  Columbia Gas may not rely on a risk of possible administrative penalties or civil liability to establish that public policy is violated by the contractual agreement to suspend rather than discharge Rose for violations of state and federal regulations.

**AFFIRMED**.