**NOT RECOMMENDED FOR PUBLICATION**
File Name:  15a0447n.06

**No. 14-2155**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 15, 2015
DEBORAH S. HUNT, Clerk

OAKWOOD HEALTHCARE, INC.,                )
                                         )
    Plaintiff-Appellee,                  )
                                         )
          v.                           )
                                         )
OAKWOOD HOSPITAL EMPLOYEES LOCAL         )
2568, Affiliated with Michigan Council 25, )
AFSCME,                                  )
                                         )
    Defendant-Appellant.                 )
                                         )

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

---

BEFORE:  DAUGHTREY, GIBBONS, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Judicial review of arbitration awards is limited.  Where, as here, the disputed issue is arbitrable, the arbitrator was "arguably construing" the contract, and there is no allegation that the arbitrator acted fraudulently or dishonestly, we refrain from imposing our interpretation of the contract on the parties.  Because the district court did not properly apply these principles, we reverse the district court's order vacating the arbitration award and reinstate the award.

I.

Shannon "Ken" Curry was a dietary assistant responsible for cleaning the kitchen at Oakwood Healthcare's hospital in Dearborn, Michigan ("Hospital").  He was a member of

AFSCME Local 2568 ("Union"), which negotiated a collective bargaining agreement ("CBA") with the Hospital, effective during the relevant time period.

In July 2012, a hospital cook spilled potatoes on the kitchen floor. In response, Curry swept up the potatoes—along with floor debris—and put them on a sanitary food preparation table. When the cook saw the debris, he told Curry that he was immature and may have called Curry an "asshole." When confronted by a supervisor, Curry denied his actions and accused the cook of calling Curry "the N word." The supervisor then showed Curry a surveillance video of the incident, and Curry admitted to putting the floor debris on the table. The Hospital later terminated Curry for a "major work rule" violation: failing "to fulfill the responsibilities of the job to an extent that might reasonably or does cause injury to a patient, visitor, or another employee."

The Union pursued arbitration on Curry's behalf. The arbitrator agreed that Curry had violated the major work rule. He also found that Curry had "embellished the reaction" of the cook and had not been called "the N word." Nonetheless, the arbitrator identified several mitigating factors and reinstated Curry to his position without back pay under the CBA's "just and proper cause" standard for termination. The mitigating factors included Curry's ten years of seniority, a positive performance evaluation, and two certificates of appreciation. But the arbitrator conditioned Curry's reinstatement on Curry attending an anger management class, if the Hospital so required.

Instead of reinstating Curry, the Hospital filed a complaint in federal district court to vacate the arbitration award. The district court vacated on the basis that the arbitrator overstepped his authority. Specifically, it held that the arbitrator had authority to determine

whether Curry had violated a major work rule, but, once the arbitrator found a violation, he lacked authority under the CBA to modify the degree of discipline imposed. The Union appeals.

II.

When a district court vacates an arbitration award, we review its legal conclusions de novo and its factual findings for clear error. *Int'l Bhd. of Teamsters, Local 519 v. United Parcel Serv., Inc.*, 335 F.3d 497, 503 (6th Cir. 2003). However, our judicial review of the underlying arbitration decision is "very limited." *Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 216 (6th Cir. 2008) (quotation marks omitted); *see also Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 514−15 (6th Cir. 1999) (per curiam) ("[O]ur review of an arbitration award is one of the narrowest standards of judicial review in all of American jurisprudence." (quotation marks omitted)).

"Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (per curiam) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). "[I]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* (internal quotation marks omitted).

This approach reflects "a decided preference for private settlement of labor disputes without the intervention of government." *Misco*, 484 U.S. at 37. "Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and the meaning of the contract that they have agreed to accept." *Id.* at 37−38. Accordingly, "[i]t is only when the arbitrator strays from interpretation and

application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable." *Id.* (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

Our court's scope of review is limited to three questions of "procedural aberration":

- Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration?
- Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award?
- In resolving any legal or factual disputes, was the arbitrator "arguably construing or applying the contract"?

*Mich. Family Res., Inc. v. SEIU Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc). "So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made serious, improvident or silly errors in resolving the merits of the dispute." *Id.* (internal quotation marks omitted).

### III.

The Hospital contends that the arbitrator exceeded his authority by modifying the discipline imposed by the Hospital. The Union, however, frames the dispute as a challenge to the merits of the arbitrator's interpretation of the CBA. We therefore address the first and last "procedural aberration" inquiries: whether the arbitrator exceeded the scope of his authority and whether he was "arguably construing or applying" the contract. *See id.*

### A.

In concluding that the arbitrator exceeded his authority, the district court compared three of our cases. Predominantly, it relied on *International Brotherhood of Electrical Workers, Local 429 v. Toshiba America, Inc.*, 879 F.2d 208 (6th Cir. 1989). In that case, we held that once the union stipulated that the employees had engaged in an illegal walkout in violation of the

collective bargaining agreement, the arbitrator was required to enforce the employees'

termination. *Id.* at 210−11. There, the contract limited the jurisdiction of the arbitrator as

follows:

> Any disciplinary action, including discharge taken as a result of a violation of [the
> no-strike clause] . . . shall not be altered or amended in the grievance and
> arbitration procedures, *the sole issue for presentation to the arbitrator and
> decision by him being whether or not the employees engaged in conduct in
> violation of [the no-strike clause] without modification of the penalties imposed
> by the arbitrator and the award.*

*Id.* at 210 (emphasis removed and added). Ruling that the arbitrator's jurisdiction was clearly

limited by this provision, we reasoned that the arbitrator's award reinstating the employee

"amount[ed] to a total disregard of the plain language of the contract" and affirmed the district

court's vacatur of the arbitration award. *Id.* at 211.

The district court in the instant case contrasted *Toshiba* with two of our other cases,

*Eberhard Foods, Inc. v. Handy*, 868 F.2d 890 (6th Cir. 1989) and *Dixie Warehouse and Cartage

Co. v. General Drivers*, 898 F.2d 507 (6th Cir. 1990), both of which upheld arbitration awards.

In *Eberhard*, we considered "whether the just cause provision of the collective bargaining

agreement . . . allows the arbitrator to weigh considerations of fairness when reviewing the

penalty imposed [by the employer]" for violating work rules agreed to by the parties. 868 F.2d

at 890. We held that the language of the collective bargaining agreement was not "sufficiently

clear so as to deny the arbitrator the authority to interpret the agreement as he did, i.e., to

interpret the agreement to permit arbitration of the fairness of the remedy, once a violation of the

work rules is found." *Id.* at 893.

In the *Eberhard* contract, one provision provided that the right to discharge an employee

"for cause" was within the "sole discretion" of the employer, but another provision stated that the

employer was prohibited from discharging an employee without "just cause." *Id.* at 892. We found no provision expressly limiting arbitration to whether a violation of work rules had occurred or otherwise clarifying that the arbitrator was not authorized to consider whether there was "just cause" for certain discipline. We concluded that these provisions could be read together in more than one way, and observed that there was "nothing . . . in the CBA or work rules which expressly limits or removes from the arbitrator the authority to review the remedy." *Id.* We were therefore required to defer to the arbitrator's construction of the contract. *Id.* at 892–93.

Similarly, in *Dixie*, we asked whether an arbitrator exceeded his authority by reinstating an employee. 898 F.2d at 508. There, the relevant provisions provided that (1) the employer "shall not discharge or suspend any employee without just cause," (2) the discharge of employees "for proper cause" was the sole prerogative of the employer "except to the extent it was specifically limited by the agreement," and (3) the arbitrator "may only interpret this Agreement, and shall not add to, subtract from, or otherwise change or modify it." *Id.* at 508. As in *Eberhard*, we observed there was no contractual provision that expressly limited or removed the arbitrator's authority to review and modify a penalty, so we were required to defer to the arbitrator's construction of the contract. *Id.* at 511. Because the arbitrator had construed the contract to give him authority to review and modify the penalty, and in the absence of a contractual provision that "expressly limits or removes" that question from the arbitrator, the arbitrator did not exceed his authority. *Id.*

The contract in the instant case is decidedly more like the contracts in *Eberhard* and *Dixie* than *Toshiba*. Here, the Hospital has the "right . . . to discharge or discipline a seniority employee for just and proper cause," Section 4.1(a), and "retains the sole right and shall have

free hand to manage and operate its Hospital, *subject only to the condition that it shall not do so in any manner which is inconsistent with this Agreement*," Section 8.1. This includes "the right to make at any time and to enforce any rules and regulations which it considers necessary or advisable for the safe, effective, and efficient operation of the Employer *so long as such rules and regulations are not inconsistent herewith*, and any employee who violates or fails to comply therewith may be subject to discipline, and may have recourse to the Grievance Procedure of this Agreement in the event the employee feels aggrieved by *such discipline*." Section 8.1.

Section 3.1(a) defines a grievance as "a claim by an employee in the Bargaining Unit . . . that there has been a violation of any provision of this Agreement." Section 3.1(b) provides that the grievance procedure defined in Article 3 "shall serve as the means for the peaceful settlement of *all disputes that may arise between them* concerning the interpretation or application of this Agreement." Section 3.2, Step 4(c) defines the arbitrator's jurisdiction:

> The jurisdiction of arbitration hereunder shall be limited to employee grievances arising out of the interpretation or application of this Agreement . . . but shall not extend to any retirement plan for employees. The arbitrator shall not have jurisdiction to add to, subtract from, or modify any of the terms of this Agreement, . . . or to specify the terms of a new agreement, or to substitute discretion for that of any of the parties hereto or to exercise any of their functions or responsibilities. If the grievance concerns matters not so within the jurisdiction of arbitration, it shall be returned to the parties without decision.

The Hospital's work rules provide that "[i]nfractions of a major nature will result in corrective action that may begin with [a 3-day or 5-day] Suspension or may result in immediate Termination."

Unlike the *Toshiba* contract, the CBA in this case does not address whether an arbitrator has authority to evaluate the degree of discipline under the "just and proper cause" standard. And it certainly does not "clearly" prescribe that the sole issue for arbitration is whether a

violation of the work rules has occurred, or that the arbitrator may not modify the discipline imposed by the employer. *Cf.* 879 F.2d at 210; *see also Truck Drivers*, 512 F.3d at 220 (reversing a district court order vacating an arbitration award and explaining that although parties may "limit the arbitrator's authority to fashion a remedy by careful drafting," such an attempt must "produce a clearly crafted, internally consistent agreement" that removes the dispute from arbitration).

As in *Eberhard* and *Dixie*, the contract is susceptible to more than one interpretation. We resolve doubts over arbitrability in favor of coverage. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 583 (1960); *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). We should therefore defer to the arbitrator's interpretation of the contract as extending to the disputed issue. The dispute is arbitrable, and the arbitrator did not act outside his authority.

At best, the Hospital's arguments to the contrary illustrate that its reading of the CBA is one reasonable interpretation, but not the only reasonable interpretation. For example, the Hospital contends that its authority to make and enforce work rules proves that it has the discretion to assign any degree of discipline authorized under the work rules. However, that provision must be read in conjunction with the provision committing the Hospital to a "just and proper cause" standard for discipline. By adopting the Hospital's argument, the district court erred by conflating a violation of a major work rule with "just and proper cause" for termination. *Cf. Gen. Drivers, Warehousemen & Helpers, Local 89 v. Wilamette Indus.*, *Inc.*, 182 F.3d 917 (6th Cir. 1999) (providing the employer with "the right to discharge an employee for good cause *or* violation of house rules" (emphasis in original)). Nothing in the CBA provides that violation of a major work rule automatically constitutes just cause for termination. Since the work rules

provide a range of discipline for Curry's violation, it is possible that there would be "just cause" for one penalty, but not another. Moreover, Section 8.1 that provides the Hospital with the right to enforce work rules limits the Hospital's authority to enforce the rules if they are "inconsistent" with the rest of the CBA and provides that an employee who "feels aggrieved by *such discipline*" under the rules may have recourse to "the Grievance Procedure," which includes arbitration. The Hospital's authority to make and enforce work rules is insufficient to read the instant dispute out of the broad arbitration clause.

B.

If we interpret the Hospital's argument as challenging the merits of the arbitrator's interpretation, our review is especially deferential. We ask whether, in resolving any legal or factual disputes, the arbitrator was "arguably construing or applying the contract." If so, we will defer to the arbitrator's interpretation of the contract, even if the arbitrator made "serious, improvident or silly errors in resolving the merits of the dispute." *Mich. Family Res.*, 475 F.3d at 753 (internal quotation marks omitted).

It is possible that an arbitration decision could be "so ignorant of the contract's plain language as to make implausible any contention that the arbitrator was construing the contract." *Id.* (internal quotation marks, alterations, and citation omitted). "An interpretation of a contract thus could be 'so untethered to' the terms of the agreement . . . that it would cast doubt on whether the arbitrator indeed was engaged in interpretation." *Id.* (quoting *Garvey*, 532 U.S. at 512 (Stevens, J., dissenting)). "Such an exception of course is reserved for the rare case. For in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that." *Id.* "This view of the 'arguably construing' inquiry no doubt will permit only the most egregious

awards to be vacated. But it is a view that respects the parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements, and a view whose imperfections can be remedied by selecting better arbitrators." *Id.* at 753–54 (citation omitted).

In *Michigan Family Resources,* our en banc court considered whether an arbitrator had "arguably" construed a contract. 475 F.3d at 754. We began by observing that the arbitration opinion had "the hallmarks of interpretation," such as quoting from and analyzing the pertinent provisions of the agreement. *Id.* We noted that "at no point does [the arbitrator] say anything indicating that he was doing anything other than trying to reach a good-faith interpretation of the contract." *Id.* We then proceeded to analyze the relevant provisions of the contract to illustrate that more than one interpretation of the contract was possible. *Id.* at 754–56. We stopped short, however, of endorsing either interpretation because, even if the arbitrator made "a serious legal error" of interpretation, our precedent does not authorize vacating of the award. *Id.* at 756. "An arbitrator does not exceed his authority every time he makes an interpretive error; he exceeds that authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Id.* Accordingly, we reversed the district court's order vacating the arbitration award.

Likewise, in *UAW v. Michigan Mechanical Services*, 247 F. App'x 649 (6th Cir. 2007), we held that an arbitrator had at least arguably construed the relevant contractual provisions. *Id.* at 654. We observed that the arbitrator in his opinion discussed the relevant provisions of the agreements between the parties and analyzed the relationship between the provisions. *Id.* at 653. There was no indication that the arbitrator "was doing anything other than trying to reach a good-faith interpretation" of the relevant contractual provisions. *Id.* Moreover, because the contract

language did not "so clearly dictate[] a different outcome" so "as to make implausible any contention that the arbitration was construing the contract," we concluded that the arbitrator was "at least arguably construing the relevant provisions" of the parties' agreements, and we were confined to upholding the arbitrator's award. *Id.* at 653−54.

By contrast, the cases in which our court has vacated an arbitration award on the merits have involved considerable departure from the plain language of the contracts. *See, e.g.*, *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 416 (6th Cir. 2008) (arbitrator interpreted the wrong agreement); *Peterbilt Motors Co. v. UAW Int'l Union*, 219 F. App'x 434, 437–38 (6th Cir. 2007) (insurer not subject to arbitration provision).

In this case, the arbitrator cited what he considered the relevant provisions of the contract and work rules. He also quoted relevant provisions, including the Hospital's commitment to a "just and proper cause" standard for evaluating discipline. And there is no indication that the arbitrator was doing anything other than trying to reach a good-faith interpretation of the contract. Accordingly, under this highly deferential review, the arbitrator was at least "arguably construing or interpreting" the contract.

The Hospital has filed a motion to strike three exhibits from the Union's appellate brief. The exhibits are copies of arbitral decisions resulting from prior arbitrations between the parties. Because we need not reach the Union's argument about the parties' arbitration history to resolve this appeal, the Hospital's motion to strike is moot.

IV.

The Hospital also argues that the arbitration award violates public policy. "[A] court may not enforce a collective-bargaining agreement that is contrary to public policy." *Misco*, 484 U.S. at 43 (internal quotation marks omitted). However, "any such public policy must be 'explicit,'

'well defined,' and 'dominant.'" *Eastern Associated Coal Corp. v. United Mine Workers of Am.*, 531 U.S. 57, 62 (2000) (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983)). "It must be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Id.* (internal quotation marks omitted). "The question is whether the actual arbitration award—the enforcement of the interpretation of the CBA—violates public policy, not whether the breach of the labor agreement or the potential actions that could be taken in response to the award violate public policy." *Equitable Res., Inc. v. United Steel, Paper & Forestry*, 621 F.3d 538, 551 (6th Cir. 2010). In other words, our focus is not on the conduct of the employee that led to discipline, but on whether the arbitration award violates an explicit public policy. *Columbia Gas of Ohio, Inc. v. Util. Workers Union of Am.*, 329 F. App'x 1, 4 (6th Cir. 2009).

In *Eastern Associated Coal*, the Supreme Court confirmed an arbitration award reinstating an employee truck driver who had twice tested positive for marijuana. 531 U.S. at 67. In that case, the Court considered whether the award, by reinstating the driver, violated federal statutes and U.S. Department of Transportation regulations prohibiting drug use by commercial truck operators. *Id.* at 63−67. The Court observed that none of the laws or regulations cited "forbid an employer to reinstate in a safety-sensitive position an employee who fails a random drug test once or twice." *Id.* at 65. The Court explained that the arbitration award was not contrary to the policies cited because it did not "condone" the employee's conduct "or ignore the risk to public safety that drug use by truck drivers may pose." *Id.* Rather, the award punished the employee by suspending him for three months, thus depriving him of nearly $9,000 in lost wages, required him to pay arbitration costs of both sides, subjected him to substance-abuse treatment and testing, and acknowledged that another failed drug test would result in discharge.

*Id.* at 65−66. Finding the award did not "'run contrary'" to any explicit, well-defined, dominant public policy, it was enforceable. *Id.* at 67 (quoting *Misco*, 484 U.S. at 43).

We have rejected a public policy argument in a case with similar facts to the instant case. In *Columbia Gas*, we considered whether an arbitration award that reinstated an employee without back pay or benefits but without loss of seniority after a fourteen-month suspension violated public policy. 329 F. App'x 1. There, the employee was a gas-service technician terminated for intentionally violating company policy and federal safety regulations on twelve occasions. *Id.* at 2. We observed that the relevant inquiry was whether enforcement of the contractual agreement to reinstate the employee with a fourteen-month suspension would violate public policy, not whether the employee's conduct violated public policy. *Id.* at 5. Comparing the facts to other cases involving safety-sensitive positions, we concluded that reinstatement after a fourteen-month unpaid suspension did not violate public policy. "That is not to say, however, that the arbitrator could not have found just cause [for termination], or that future misconduct would not be subject to discipline or discharge, only that the award is not unenforceable as a violation of public policy." *Id.* at 6.

In this case, even assuming there is an explicit, well-defined, dominant public policy against food contamination in hospitals, the Hospital has not shown that reinstating Curry contravenes that policy. The arbitrator reinstated Curry after an unpaid suspension of fifteen months and conditioned his return on attending an anger management class. The arbitrator gave due consideration to the Hospital's interest in enforcing its safety rules, issuing a stern reprimand (explaining that the behavior was "just unacceptable to say the least"), and concluding that Curry should not receive back pay. Under the facts of this case—reinstatement after a lengthy, unpaid

suspension subject to anger management training—the Hospital has not met its burden of establishing that Curry's reinstatement violates public policy.

V.

For these reasons, we reverse the judgment of the district court and remand for reinstatement of the arbitration award. The Hospital's motion to strike is denied as moot.