NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0039n.06

No. 23-1538

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 26, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| TRIPLE CANOPY, INC., | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| UNITED GOVERNMENT SECURITY OFFICERS | ) | DISTRICT OF MICHIGAN |
| OF AMERICA, LOCAL 206 UNION, | ) | |
| | ) | OPINION |
| Respondent-Appellee. | ) | |
| | ) | |

Before: GRIFFIN, BUSH, and READLER, Circuit Judges.

**JOHN K. BUSH, Circuit Judge.** Triple Canopy asks this court to vacate an arbitration award in favor of United Government Security Officers of America, Local 206 Union. The arbitrator determined that Triple Canopy failed to prove that it had just cause to terminate an employee. As explained below, the arbitrator acted within the scope of his authority and his award shows that he was at least arguably construing the relevant contractual provisions. Therefore, we **AFFIRM** the judgment of the district court.

**I.**

Triple Canopy is a subcontractor that provides security services to the United States government. In 2018, Triple Canopy began performance on a contract to provide the Federal Protective Service ("FPS"), a federal law enforcement agency, with security personnel at federal facilities across Michigan. Most of the Triple Canopy employees contracted to FPS were armed personnel known as Protective Security Officers ("PSOs"). The PSOs deployed to FPS in Battle

Creek, Michigan are represented in collective bargaining by United Government Security Officers of America, Local 206 ("Union"). Triple Canopy and the Union are each signatory to a collective bargaining agreement ("CBA").

Triple Canopy hired PSO John Letts in 2016. At the time of the relevant events, Letts was contracted to FPS at the Hart-Doyle-Inouye Federal Center in Battle Creek and represented by the Union. On November 24, 2020, Letts was posted at the East Manchester guard booth, where his job was to check the credentials of employees entering the premises. When FPS Commander Chad Fraley approached the guard booth in his patrol car, he observed Letts "seated in a chair with his head leaning back against the glass and his eyes closed." Fraley filed a Contractor Deficiency Notification with Triple Canopy and requested Letts be relieved of his post. After investigating the incident, including taking statements from Letts and Fraley, Triple Canopy terminated Letts on January 14, 2021 for sleeping on duty—an offense for which Triple Canopy had a zero-tolerance policy. The Union filed a grievance later that month. After completing the grievance procedure, it appealed to arbitration.

The questions the parties submitted to the arbitrator were "Did Triple Canopy have 'just cause' to terminate the Grievant? If not, what shall be the remedy?" Neither party objected to that framing of the dispute, although Triple Canopy seems to have argued that the matter was outside the scope of arbitration. In its post-hearing brief, Triple Canopy stated, "At issue is a credibility determination whether [Letts] committed the terminable offense of sleeping on duty. . . . Whether Letts was sleeping is the only issue in the instant matter." Arb. Br., R.13-1, PageID 110–11. The employer quoted Articles 2, 7, 8, and 24 of the CBA in their entirety, but cited only one of those provisions in its argument. At the tail-end of its brief, Triple Canopy quoted Article 8, Section 9 of the CBA, which provides that the arbitrator cannot substitute his or her judgment for that of the

government's "regarding a security clearance/suitability determination or requirement" of the government. *Id.* at PageID 125. Because "Fraley determined Letts was no longer suitable to stand post anywhere under his command," and because there was no evidence that Fraley possessed any animus towards Letts, Triple Canopy argued the arbitrator must adopt Fraley's judgment. *Id.*

After a three-day hearing and post-hearing briefing, the arbitrator determined on May 5, 2022 that Triple Canopy failed to establish by a preponderance of the evidence that Letts was sleeping on duty. Considering the totality of the circumstances, the arbitrator determined it was more likely that Letts was merely inattentive, consistent with the conclusion of Triple Canopy employee Lieutenant Underwood, who investigated the event. Because inattentiveness is still a violation of the FPS security manual, the arbitrator converted Letts's termination to a thirty-day disciplinary suspension.

Triple Canopy moved in the United States District Court for the Western District of Michigan to vacate the arbitration award. It argued that the arbitrator exceeded the scope of his authority when he concluded that Letts was not sleeping on duty because, under Articles 7, 8, and 24 of the CBA, that was a non-arbitrable determination made by the government.[1] And because the arbitrator substituted his judgment for that of the Government regarding whether Letts was asleep, he arguably failed to construe or apply the CBA. The Union countered that Triple Canopy had constructively waived those arguments because it failed to raise them in arbitration.

---

[1] Under Article 7 of the CBA, no non-probationary employee can be "disciplined without just cause unless removed from working under the contract by the [government], or if the employee's credentials are denied or withdrawn by the [government]." CBA, R.1-2, PageID 34. Suspensions and dismissals by Triple Canopy alone (i.e., not because of an action or order of the Government) are "subject to the Grievance & Arbitration Procedure set forth" in the CBA. *Id*. Under Article 24, the administration of the terms of the CBA are "subject to the wishes of the Government," which "may supersede any understanding regarding post assignments, hours, shifts, credentials, qualifications, etc., as [it] deems to be in [its] interest." *Id.*, PageID 49. This provision adds that any employee removed because of a government directive has no recourse in arbitration. Article 8, Section 9 is quoted in relevant part above.

The district court did not decide whether Triple Canopy had waived its arguments, but concluded that it had, at the very least, made conflicting statements and failed to argue that Fraley's determination was binding on the arbitrator. The court further determined that the arbitrator did not exceed his authority. Although Articles 7 and 24 exclude from arbitration terminations made because of a government "directive," the CBA does not define that term. Similarly, the CBA does not define what "a security clearance/suitability determination or requirement of" the government is, which Article 8 excludes from arbitration. Because of this ambiguity, and because Fraley himself stated that he did not have the authority to order Letts's dismissal, the district court determined it was unclear whether Fraley's Contractor Deficiency Notification made this dispute non-arbitrable. It also determined that the arbitrator arguably construed or applied the CBA because he engaged in a good-faith analysis of just cause, referenced the CBA, cited each party's arguments, and made factual findings before concluding there was not sufficient evidence that Letts was sleeping on duty.

On appeal, Triple Canopy makes the same arguments it made before the district court. Also, it contends that the district court mistook its argument that the arbitrator was not permitted to determine whether Letts was sleeping on duty for an argument that the entire dispute was not arbitrable.

**II.**

When reviewing a district court's refusal to vacate an arbitration award, we review its legal conclusions de novo and its factual findings for clear error. *AK Steel Corp. v. United Steelworkers of Am.*, 163 F.3d 403, 407 (6th Cir. 1998) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995)). Even so, our review of an arbitration award is "one of the narrowest standards of judicial review in all of American jurisprudence." *Id*. at 409 (citation omitted). This

is because the parties to an arbitration agreement bargained for the private settlement of their disputes, not "three layers of federal judicial review." *Mich. Fam. Res., Inc. v. Serv. Emps. Int'l Union Loc. 517M*, 475 F.3d 746, 756 (6th Cir. 2007) (en banc); *see also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987). Accordingly, our review is limited to three questions of "procedural aberration": first, whether the arbitrator acted "outside his authority" by resolving a dispute not committed to arbitration; second, whether the arbitrator committed fraud, had a conflict of interest, or otherwise acted dishonestly in issuing the award; and third, whether the arbitrator was "arguably construing or applying the contract" in resolving any legal or factual disputes. *Mich. Fam. Res., Inc*, 475 F.3d at 753.

### III.

Of the three bases on which Triple Canopy can challenge the arbitration award, it argues that the arbitrator exceeded the scope of his authority and failed to construe or apply the CBA. We therefore address the first and last "procedural aberration" inquiries.[2]

### A.

#### *1. The scope of the arbitrator's authority*

We first consider whether the arbitrator exceeded the scope of his authority. Triple Canopy continues to argue on appeal that, because Fraley issued a Contractor Deficiency Notice stating that Letts was sleeping, the CBA placed the inquiry out of the arbitrator's reach. This argument depends largely on Article 8, Section 9 of the CBA, which excludes from arbitration any matter

---

[2] The Union argues Triple Canopy waived these points because it did not raise them in arbitration. "Generally, arguments not presented to an arbitrator are deemed waived and cannot be raised for the first time in an enforcement action in a district court." *Armco Emps. Indep. Fed'n, Inc. v. AK Steel Corp.*, 149 F. App'x 347, 352 (6th Cir. 2005). Triple Canopy insists that it preserved its arguments by raising them in its opening statement and post-hearing brief. However, we need not consider whether Triple Canopy adequately preserved its arguments because, even assuming it did, they are meritless. *See*, *e.g.*, *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Loc. 890L*, 656 F.3d 368, 373 n.3 (6th Cir. 2011).

regarding a government "security clearance/suitability determination or requirement." CBA, R.1-2, PageID 36.

This court's decision in *Michigan Family Resources* "severely curtailed the 'scope of authority' concept," such that an arbitrator exceeds his authority only when he decides a dispute that an agreement does not commit to arbitration. *Truck Drivers Loc. No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 217 (6th Cir. 2008) (quoting *Mich. Fam. Res.*, 475 F.3d at 756). The arbitrator's own construction of the CBA "determines the scope of [his] authority," *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890, 892 (6th Cir. 1989), and he need not "stay narrowly within the technical limits" of the dispute submitted by the parties. *Johnston Boiler Co. v. Loc. Lodge No. 893, Int'l Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, AFL–CIO*, 753 F.2d 40, 43 (6th Cir. 1985). On review, "the presumption of authority that attaches to an arbitrator's award applies with equal force" to his judgment that the award comports with the submitted dispute. *Id.*; *see also Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 155 F.3d 767, 772 (6th Cir. 1998). Thus, we will not overturn an arbitration award on this basis unless it is "clear" that the arbitrator has "exceeded the scope of the submission." *Tenn. Valley Auth.*, 155 F.3d at 772 (citations omitted).

The arbitrator here did not exceed the scope of his authority. First, the question of whether Triple Canopy had just cause to terminate Letts could not be answered without determining whether Letts was sleeping on duty. This is because Triple Canopy had a zero-tolerance policy for sleeping on duty. Triple Canopy agrees that the question submitted for arbitration—whether it had just cause to terminate Letts—was properly before the arbitrator. It still insists that the CBA required the arbitrator to accept Fraley's determination that Letts was sleeping on duty when deciding that question. But the submitted dispute, of course, turned entirely on the arbitrator's

factual determination of whether Letts was sleeping. In *Johnston Boiler Co.*, this court held that, where the parties asked the arbitrator to determine whether the employer had "just cause" to terminate an employee, the arbitrator was also free to determine the procedural propriety of the termination because it was "sufficiently integral" to the just-cause inquiry. 753 F.2d at 43. The question of whether Letts was sleeping is similarly integral to the question of whether Triple Canopy had just cause to terminate him.

Second, given the ambiguity of the CBA provisions Triple Canopy relies on and the uncertainty of their applicability to the dispute, the arbitrator's interpretation of his authority was appropriate. In *Brotherhood of Locomotive Engineers and Trainmen v. United Transportation Union*, for example, the parties agreed that the dispute submitted to arbitration was proper, but the employer contended that the arbitrators exceeded the scope of their authority because the arbitration agreement required them to adopt a "recognized interpretation" of a particular provision when deciding the submitted dispute. 700 F.3d 891,903 (6th Cir. 2012). But the agreement did not define "recognized interpretation," point to where the arbitrators were meant to find it, or make clear whether the arbitrators were required to apply it. *Id.* The parties also did not direct the arbitrators to apply any "recognized interpretation" in their submissions. *Id.* Because the relevant provision of the contract "ha[d] more than one plausible meaning," this court held that it was "not beyond the [arbitrators'] power to determine a meaning that finds support in the language of the agreement." *Id.* Here, as the district court pointed out, it is unclear whether Fraley's Contractor Deficiency Notification was a government "directive," or "security clearance/suitability determination or requirement" that excluded the factual determination from arbitration. The arbitrator's interpretation of his authority—that determining whether Triple Canopy had "just cause," encompassed determining whether Letts was sleeping on duty—was therefore permissible.

### 2. The merits of the arbitration award

Having concluded the arbitrator acted within the scope of his authority, we turn to the merits of the arbitration award. Our review of the merits of an arbitration award is particularly deferential and asks only whether the arbitrator is "even arguably construing or applying the contract" before him. *Mich. Fam. Res., Inc.*, 475 F.3d at 752 (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). If the answer is yes, our inquiry is over. If it is unclear, "we will presume that the arbitrator was doing just that." *Id*. at 753. Consequently, vacatur on these grounds "is reserved for the rare case" in which the arbitration award is "so ignorant of the contract's plain language" that it is "implausible" that the arbitrator was construing the contract. *Id.* (cleaned up).

Triple Canopy argues the arbitrator failed to arguably construe or apply the CBA because his award does not refer to the CBA in a meaningful way and ignores its terms. But this arbitration award easily survives our deferential standard. First, like the arbitration award in *Michigan Family Resources*, it has "all the hallmarks of interpretation." *Id.*at 754. The arbitrator was asked to determine whether Triple Canopy had "just cause" to terminate Letts. His award finds support in Article 7 of CBA—which does not define the term but commits the review of disciplinary action for "just cause" to arbitration—and in the "ample contextual material" he considered. *See Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers – Transp. Div. v. CSX Transp., Inc.*, 754 F. App'x 397, 403 (6th Cir. 2018). As the district court noted, the arbitrator cited the CBA as an exhibit, summarized each party's position, and made ten factual findings before concluding that Triple Canopy had not sufficiently proven that Letts was sleeping on duty. He also considered a prior Triple Canopy arbitration regarding a similar incident in which the arbitrator analyzed

"whether sufficient 'indicia of sleeping' ha[d] been established." *See id.* (noting that arbitrator considered "previous arbitration decisions interpreting the same CBA").

Although the CBA excludes discipline enacted because of government orders from arbitration, it is uncertain whether Letts's termination fell under that category, as explained earlier. It is similarly ambiguous whether Fraley's Contractor Deficiency Notice was insulated from arbitrator review as a judgment by the government "regarding a security clearance/suitability determination" or a government "requirement." The CBA therefore does not "so clearly dictate[] a different outcome as to make implausible any contention that the arbitrator was construing the contract" when he determined that Triple Canopy needed, and did not have, just cause to terminate Letts. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., Loc. 174 v. Mich. Mech. Servs., Inc.*, 247 F. App'x 649, 653 (6th Cir. 2007) (citation omitted). Because nothing in the award indicates that the arbitrator "was doing anything other than trying to reach a good-faith interpretation of the contract," we decline to vacate it on these grounds. *Mich. Fam. Res., Inc.*, 475 F.3d at 754.

**IV.**

In sum, we conclude that the arbitrator was acting within the scope of his authority and was, at minimum, arguably construing the terms of the CBA. We therefore **AFFIRM** the judgment of the district court.